**Howard ALLEN, Appellant (Defendant below),**

v.

**STATE of Indiana, Appellee (Plaintiff below).**

No. 49S00–9804–PD–249.

Supreme Court of Indiana.

June 29, 2001.

---

1. Ind.Code § 35–42–1–1 (1993).

Susan K. Carpenter, Public Defender of Indiana, Joanna Green, Deputy Public Defender, Kathleen Cleary, Deputy Public Defender, Danielle Gregory, Deputy Public Defender, Indianapolis, IN, Attorneys for Appellant.

Karen Freeman–Wilson, Attorney General of Indiana, Priscilla J. Fossum, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

SULLIVAN, Justice.

Petitioner Howard Allen appeals the denial of post-conviction relief from his conviction for murder and sentence of death. We affirm the denial of post-conviction relief for the reasons set forth in this decision.

*Background*

Our earlier opinion in this matter describes in detail the crimes of which Allen was convicted. *See Allen v. State*, 686 N.E.2d 760, 766 (Ind.1997). In brief, Allen murdered 74–year–old Ernestine Griffin in her Indianapolis home. Police determined that Griffin had been killed by a combination of a knife wound to her chest and a blow to her head. On a kitchen counter, police found a piece of paper with Allen's name and phone number on it. A neighbor of Griffin's informed police that Allen had inquired with Griffin about a car that the neighbor had for sale. Police later discovered Griffin's camera at the carwash where Allen worked. After extensive questioning, Allen admitted to the police that he had struck Griffin, but denied killing her.

Allen was charged with Murder,[1] Felony Murder,[2] and Robbery.[3] A jury convicted Allen on all three charges and recommended a sentence of death. The trial court sentenced Allen to death on August 30, 1988.

We upheld Allen's conviction and death sentence on direct appeal. *Allen v. State*, 686 N.E.2d 760 (Ind.1997). We addressed numerous issues in our opinion, including the validity of Allen's waiver of his *Miranda* rights, the admissibility of certain evidence, and the effectiveness of trial counsel. He also challenged the delay of his appeal that resulted from the trial court's failure to appoint appellate counsel, the court reporter's failure to prepare a record, and the inadequate briefing of his initial appellate counsel, who was subsequently replaced and disciplined. *Allen*, 686 N.E.2d at 784. We rejected these claims and affirmed.

Allen subsequently sought to have his convictions and sentence set aside by filing a petition for post-conviction relief as permitted by Indiana Post–Conviction Rule 1. The post-conviction court conducted extensive proceedings on his claims for relief but ultimately denied them. Allen now appeals from this denial of post-conviction relief.

*Discussion*

For the most part, completion of Indiana's direct appellate process closes the door to a criminal defendant's claims of error in conviction or sentencing. However, our law allows defendants to raise a narrow set of claims through a petition for post-conviction relief. *See* Ind. Post–Conviction Rule 1(1). The scope of the relief provided for in these procedures is limited to "issues that were not known at the time of the original trial or that were not available on direct appeal." *Ben–Yisrayl v. State*, 738 N.E.2d 253, 258 (Ind.2000). Issues available but not raised on direct appeal are waived, while issues litigated adversely to the defendant are *res judicata*. *See Williams v. State*, 724 N.E.2d 1070, 1076 (Ind.2000), *cert. denied*, —— U.S. ——, 121 S.Ct. 886, 148 L.Ed.2d 793 (2001).

---

**1.** Ind.Code § 35–42–1–1(1).

**2.** *Id.* § 35–42–1–1.

**3.** *Id.* § 35–42–5–1.

■ A court that hears a post-conviction claim must make findings of fact and conclusions of law on all issues presented in the petition. *See* Ind. Post–Conviction Rule 1(6). The findings must be supported by facts and the conclusions must be supported by the law. *See Bivins v. State,* 735 N.E.2d 1116, 1121 (Ind.2000), *reh'g denied.* Our review on appeal is limited to these findings and conclusions.

■ We apply a deferential standard of review when examining these findings and conclusions. *See Williams,* 724 N.E.2d at 1076 ("Post-conviction procedures do not afford the defendant with a 'super-appeal.'"). Because the petitioner bears the burden of proof in the post-conviction court, *see* Ind. Post–Conviction Rule 1(5), an unsuccessful petitioner appeals from a negative judgment. A petitioner appealing from a negative judgment must show that the evidence as a whole "leads unerringly and unmistakably to a conclusion opposite to that reached by the trial court." *Weatherford v. State,* 619 N.E.2d 915, 917 (Ind.1993), *reh'g denied.* This means that "[we] will disturb a post-conviction court's decision as being contrary to law only where the evidence is without conflict and leads to but one conclusion, and the post-conviction court has reached the opposite conclusion." *Miller v. State,* 702 N.E.2d 1053, 1058 (Ind.1998), *cert. denied,* 528 U.S. 1083, 120 S.Ct. 806, 145 L.Ed.2d 679 (2000).

## I

Allen first contends that his conviction and sentence must be vacated because a juror failed to reveal her criminal record when asked to do so on juror questionnaires. Specifically, a routine questionnaire asked potential jurors if they had "ever been accused of a crime." One woman, who was eventually seated as a juror at Allen's 1988 trial, responded to this question with a simple "no." On the day jury selection began, she completed another questionnaire in which she certified that she had never appeared in court. Despite these answers, the post-conviction record shows that the juror had had several brushes with the law, including: (1) a May, 1982, arrest for operating a vehicle under the influence of alcohol; (2) a September, 1976, arrest for public intoxication; and (3) a January, 1961, arrest for operating a vehicle under the influence of alcohol, of which she was found guilty.[4]

■ We have held that juror misconduct[5] will warrant a new trial only when the misconduct is both "gross" and "harmed the defendant." *Lopez v. State,* 527 N.E.2d 1119, 1130 (Ind.1988). *See also Hoskins v. State,* 737 N.E.2d 383, 385 (Ind.2000) ("To warrant a new trial upon a claim of juror misconduct, the defendant must show that the misconduct was gross and probably harmed the defendant."). The post-conviction court determined that Allen was not harmed by the juror's conduct.

■ First, the post-conviction court made findings of fact to the effect that "[t]rial counsel … would not have necessar[il]y excluded [this juror] had he know[n] about her convictions, but since the convictions were related to alcohol use he would have asked additional *voir dire* questions relating to her behavior. [Coun-

---

4. The same juror was also arrested for public intoxication in June, 1988, after the jury had convicted Allen and recommended death. She later pled guilty to this crime.

5. Although the State argues that the juror might have misunderstood the questionnaire and therefore the misstatements were not misconduct, we assume for the sake of argument that the juror did in fact commit misconduct.

sel] did not find the facts of the convictions to be troubling." Appellant's Appendix at 18.

There is evidence in the post-conviction record to support the post-conviction court's findings of fact. Allen's trial counsel testified at a deposition that he would not have sought to exclude the juror solely on the basis of the prior arrests even if she had disclosed them on the questionnaires. However, trial counsel testified that had he known of the prior offenses, he would have questioned the juror as to whether "it had been something of a recent nature and also kind of look to see if there's more than one . . . or tried to figure out whether or not there was a pattern, whether or not I was dealing with a drunk." (R.P–C.R. at 2362, Petitioner's Exhibit 45 at 28–29.) He emphasized that "quite simply, if she had been arrested in some proximity to this in this succession of one or two or three or something of that nature . . . that would tell me . . . this person's got a problem and even getting arrested isn't remedying it." (*Id.*) On redirect, counsel again testified that he "would have explored . . . [the juror's] pattern of conduct, [and] the proximity of time is obviously one of th[ose] things." (*Id.* at 113.)

From its findings, the post-conviction court concluded that Allen suffered no harm because his trial counsel would not have moved to exclude the juror even if he knew about the juror's misstatements. Specifically, the post-conviction court concluded that "Allen's evidence falls short to show that his trial counsel would have removed [the juror] from the jury panel had he known of the convictions. Trial counsel wavered as to whether that juror

would have been excluded or not. *Allen* has not shown any prejudice from the juror misconduct. . . ." Appellant's Appendix at 18 (emphasis in original).

Having found evidence to support the post-conviction court's findings of fact, we will upset its conclusions of law only if "the evidence is without conflict and leads to but one conclusion, and the post-conviction court has reached the opposite conclusion." *Miller*, 702 N.E.2d at 1058.

▮ The post-conviction court's conclusion that Allen suffered no harm is supported by its findings. Allen's trial counsel testified that the juror's previous arrests alone would not have led him to seek her dismissal from the panel. He testified that he would have asked follow-up questions in order to determine whether the juror had a problem with alcohol that would prevent her from functioning as a juror. However, the post-conviction court could conclude that even these follow-up questions would not have led counsel to attempt to exclude the juror. The four offenses were scattered over 27 years.[6] The post-conviction court could properly conclude that these arrests were too infrequent to suggest the type of "pattern" of alcohol-related misconduct that would have led trial counsel to seek the juror's exclusion. It is also plausible that the post-conviction court inferred that because the juror herself had been a defendant in a criminal proceeding, she might have had more empathy for Allen than would a potential juror who had never been arrested or tried. That is, the post-conviction court could infer from the record she was the type of juror that *the*

---

6. Allen cites no other evidence concerning the juror and alcohol. See Br. of Appellant at 15. Moreover, counsel had the opportunity to question the juror during *voir dire*. She responded to questions about whether she could analyze the facts and the law and reach a fair

recommendation as to the death penalty. She also answered a series of questions concerning the reasonable doubt standard. There is no suggestion in the record that she did not understand these questions or gave incoherent answers to them.

*State*—and not Allen—would strike from the jury panel.[7]

## II

Allen contends that he is entitled to a new trial or, alternatively, a new sentencing hearing because he received ineffective assistance of counsel at both the trial and the penalty phase. The post-conviction court concluded that Allen could not raise any claims of ineffective of assistance of trial counsel because he asserted such a claim on direct appeal. Appellant's Appendix at 17. It is well-established that if a defendant claims on direct appeal that his trial counsel was ineffective, he may not raise further issues of trial counsel error during post-conviction review. *See Woods v. State*, 701 N.E.2d 1208, 1220 (Ind.1998), *cert. denied*, 528 U.S. 861, 120 S.Ct. 150, 145 L.Ed.2d 128 (1999), *Sawyer v. State*, 679 N.E.2d 1328, 1329 (Ind.1997), *Morris v. State*, 466 N.E.2d 13, 14 (Ind. 1984). We conclude that the post-conviction court was correct to conclude that Allen could not raise these claims in his petition for post-conviction relief.

## III

Allen contends that he should receive a new trial and sentencing because he claims he received ineffective assistance of appellate counsel in violation of the Sixth Amendment to the federal constitution. The standard for gauging appellate counsel's performance is the same as that for trial counsel. *See Trueblood v. State*, 715 N.E.2d 1242, 1256 (Ind.1999), *cert. denied*, 531 U.S. 858, 121 S.Ct. 143, 148 L.Ed.2d 94 (2000).[8] Therefore, "[t]o prevail on an ineffective assistance of counsel claim, [the petitioner] must show both deficient performance and resulting prejudice." *Williams v. State*, 706 N.E.2d 149, 154 (Ind.1999), *cert. denied*, 529 U.S. 1113, 120 S.Ct. 1970, 146 L.Ed.2d 800 (2000). *See Strickland v. Washington*, 466 U.S. 668, 687, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). As for the first prong—counsel's performance—we presume that counsel provided adequate representation. *See Troutman v. State*, 730 N.E.2d 149, 154 (Ind.2000). Accordingly, "[c]ounsel is afforded considerable discretion in choosing strategy and tactics, and we will accord that decision deference." *Williams v. State*, 733 N.E.2d 919, 926 (Ind.2000). The second prong—the prejudicial effect of counsel's conduct—requires a showing that "'there is a reasonable probability that, but for counsel's unprofessional errors, the

7. Allen also casts this argument in terms of ineffective assistance of counsel, contending that trial counsel's failure to ask follow-up questions in regards to the juror's criminal record and abuse of alcohol rendered counsel ineffective in violation of the Sixth Amendment to the federal constitution. Having already determined that the post-conviction court could conclude from the evidence that trial counsel would not have moved to exclude the juror even had he known of these offenses, we hold that counsel's lack of knowledge in this regard did not render him ineffective.

8. Despite these overlapping standards, we have noted some unique characteristics in our analysis of claims of ineffective assistance of appellate counsel:

Appellate counsel's performance, as to the selection and presentation of issues, will ... be presumed adequate unless found unquestionably unreasonable considering the information available in the trial record or otherwise known to appellate counsel. To prevail on a claim of ineffective assistance of appellate counsel, a defendant must therefore show from the information available in the trial record or otherwise known to appellate counsel that appellate counsel failed to present a significant and obvious issue and that this failure cannot be explained by any reasonable strategy.

*Ben–Yisrayl v. State*, 738 N.E.2d 253, 261 (Ind.2000)

result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Williams v. Taylor,* 529 U.S. 362, 391, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) (quoting *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052).

■ Allen's specific claims of ineffective assistance of appellate counsel are difficult to decipher, but appear to be twofold. First, he argues that counsel was deficient for raising some claims of trial counsel error in regards to mitigation evidence while not raising others. Appellant's Br. at 31–33. Second, he argues that counsel was ineffective for failing to investigate and develop a complete record for the claims he did raise.[9]

■ These claims are similar to those raised in *Ben–Yisrayl v. State,* 738 N.E.2d 253, 260 (Ind.2000). In that case, the petitioner attempted to raise several claims of trial counsel ineffectiveness, but we rejected those claims because he raised trial counsel's performance as an issue on direct appeal. *Id.* at 259 (citing *Woods,* 701 N.E.2d at 1220). However, the petitioner also argued "that appellate counsel failed to raise properly preserved meritorious issues and errors apparent in the record, failed to take necessary steps to adequately present issues that were raised, and pursued the issue of ineffective assistance of trial counsel without completely investigating and raising all related issues." *Id.* at 260. We analyzed these claims under the following standard:

When the claim of ineffective assistance is directed at appellate counsel for failing fully and properly to raise and support a claim of ineffective assistance of

trial counsel, a defendant faces a compound burden on post-conviction. If the claim relates to issue selection, defense counsel on post-conviction must demonstrate that appellate counsel's performance was deficient and that, but for the deficiency of *appellate* counsel, *trial* counsel's performance would have been found deficient and prejudicial. *Thus, the defendant's burden before the post-conviction court was to establish the two elements of ineffective assistance of counsel separately as to both trial and appellate counsel.*

*Ben–Yisrayl v. State,* 738 N.E.2d 253, 261– 62 (Ind.2000) (emphasis added).

■ Applying this standard to Allen's claims of ineffective assistance of appellate counsel, we conclude that the post-conviction court could determine that his appellate counsel were not deficient.

The post-conviction court concluded that [Allen's] appellate counsel at all stages was not ineffective in representing Allen but rather exerted an unusually vigorous defense.... Those claims and allegations that Allen says should have been asserted by [appellate counsel] are not significant issues as compared to those that were raised. Further, there is not a reasonable probability that the outcome of the proceedings of the appeal would have been different had [counsel] raised other issues.

Appellant's Appendix at 9.

The post-conviction court made certain findings of fact from which it concluded that counsel was not ineffective in this regard. The post-conviction court found that Allen's appellate counsel

9. We have noted that "appellate ineffective assistance of counsel claims generally fall into three basic categories: (1) denying access to appeal; (2) waiver of issues; (3) failure to present issues well." *Harrison v. State,* 707 N.E.2d 767, 786 (Ind.1999), *cert. denied,* 529 U.S. 1088, 120 S.Ct. 1722, 146 L.Ed.2d 643 (2000). Allen's claims fall under the second and third of these categories.

thoroughly reviewed the record of proceedings, interviewed Allen, and consulted other attorneys. After identifying issues he intended to raise on direct appeal, he hired an investigator to provide factual development and to develop litigation evidence.... From the time of his appointment to the time he filed his opening brief, appellate counsel had five months to become familiar with the record. Additionally, [counsel] filed a 158 page brief raising 17 separate issues on direct appeal.

*Id.* at 8.

The post-conviction court's findings were supported by the evidence. Appellate counsel testified at the post-conviction hearing that after he was appointed to represent Allen, he came to the conclusion that he needed to complete "factual investigation" into Allen's background because he was "concerned about [Allen's] intellectual functioning." Counsel hired an investigator to look into this potential mitigation evidence. Counsel and the investigator then attempted to retrieve records from numerous sources, including Allen's schools and the Department of Correction.[10] This investigation produced affidavits describing Allen's low I.Q. and poor school record. *See infra* note 25. Counsel filed a belated motion to correct errors in the hopes of developing a record as to these claims. *Allen,* 686 N.E.2d at 788 n. 8. This motion was denied. *Id.* However, we subsequently remanded Allen's case because the record lacked a written sentencing order. *Id.* Our remand order offered appellate counsel the opportunity to present his mitigation evidence to the trial court. *Id.* at 789. The trial court consid-

ered this evidence, and counsel raised the trial court's consideration of it as an issue on direct appeal. *Id.* at 790. Counsel testified that he believed that he needed to raise the issue of counsel's ineffectiveness as to this mitigation evidence because it was raised in the belated motion to correct errors that he filed with this court. He testified that he was concerned that a failure to do so would result in waiver, especially since the order denying his belated motion to correct errors made it clear that he could raise such issues in his brief. He noted that he knew of cases holding that if a defendant's appellate counsel was different than trial counsel, the defendant was obligated to raise a claim of ineffective assistance of counsel or the claim was waived.

Having found evidence to support the post-conviction's findings of fact, we will reverse its conclusions of law only if "the evidence is without conflict and leads to but one conclusion, and the post-conviction court has reached the opposite conclusion." *Miller v. State,* 702 N.E.2d 1053, 1058 (Ind.1998), *cert. denied,* 528 U.S. 1083, 120 S.Ct. 806, 145 L.Ed.2d 679 (2000). Allen's arguments as to appellate counsel's ineffectiveness are that counsel should not have raised issues regarding trial counsel's mitigation case because he would waive other mitigation issues, and, alternatively, that he should have conducted a more thorough investigation of the issues that he did raise. We hold that the post-conviction court could conclude that "there is not a reasonable probability that the outcome of the proceeding of the appeal would have been different had [counsel] raised other issues." Appellant's Appendix at 9.[11]

---

10. Counsel was able to complete his investigation and file a lengthy brief in little under five months. *See Allen,* 686 N.E.2d at 769.

11. Allen also recasts this argument by contending that appellate counsel was deficient

for failing to "argue as error the trial court's failure to consider relevant mitigation information." Appellant's Br. at 34. However, because we determine *infra* that trial counsel was not deficient for failing to present this

■ We reach this conclusion because the post-conviction record does not show that trial counsel was deficient in regards to the issues on which Allen relies to support his claim of ineffective assistance of appellate counsel. Under *Ben–Yisrayl*, a claim that appellate counsel was ineffective "for failing fully and properly to raise and support a claim of ineffective assistance of *trial* counsel" will be successful only when the petitioner shows that both trial counsel and appellate counsel were ineffective under the *Strickland* standard. 738 N.E.2d at 261–62 (emphasis in original). Therefore, Allen's appellate counsel could not be ineffective for waiving some claims of trial counsel error while failing fully to support others if Allen's post-conviction claims of trial counsel error did not in themselves warrant relief under *Strickland*.[12] We will analyze his claims of trial counsel error in this light. Because, as the post-conviction court concluded, Allen cannot show that *trial* counsel was ineffective, his claims of ineffective assistance of appellate counsel must fail under the *Ben–Yisrayl* standard.

### A

■ Allen first contends that his trial counsel was deficient for failing to challenge his confession on the grounds that it was obtained through coercion in violation of the due process clause of the federal constitution. Appellant's Br. at 61 (citing *Colorado v. Connelly*, 479 U.S. 157, 167, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986)). He argues that the circumstances of his confession rendered it involuntary, and therefore his counsel was ineffective for failing to object.

Allen raised several issues regarding the confession during his direct appeal. *See Allen*, 686 N.E.2d at 769–774, 777–79. Our opinion rejected Allen's claims that counsel was ineffective for failing to move to suppress the confession. *Id.* at 777–79. This holding was based on two grounds, both of which preclude Allen's claims in this case. First, we held that Allen's trial counsel made a reasonable strategic decision not to move to suppress the confession, especially in light of counsel's attempts to persuade the jury to convict only on the lesser included offense of voluntary manslaughter. *Id.* at 778 ("The strategic decision not to file a motion to suppress Allen's statements therefore did not deprive Allen of fair adversarial testing of the evidence.").[13] Whether a hypothetical motion should have been made on *Miranda* grounds (as Allen argued on direct appeal) or on due process grounds (as Allen argues here), our determination that counsel made a strategic decision not to move to suppress the confession *for any reason* binds Allen. Second, our opinion on direct appeal also concluded that even had counsel performed deficiently in regards to a motion to suppress, Allen was not prejudiced under the *Strickland* standard. *Id.* at 778–79 ("Assuming for the sake of argument that counsel's failure to file a motion to suppress is performance so deficient as to meet the first prong of

---

evidence, Allen's claims of appellate counsel ineffectiveness in this regard are unpersuasive.

**12.** Put in its simplest terms, *Ben–Yisrayl* stands for the proposition that direct appeal counsel are not ineffective in their handling of issues of trial counsel's performance *if there was no issue to raise in the first place.*

**13.** The evidence most probative to counsel's trial strategy was contained in Allen's statements to the police. We noted on direct appeal that "Allen's statements were the source of counsel's argument imploring the jury to consider convicting him on just the lesser included charge of voluntary manslaughter. If this strategy had succeeded, it would have spared Allen the death sentence." *Allen*, 686 N.E.2d at 778.

*Strickland*, we do not see prejudice sufficient to satisfy the second prong of that test. The case against Allen was so strong there is not a reasonable probability that the verdict might have been different but for counsel's alleged 'error.' "). Again, this determination bars Allen's claims despite the different theories under which a motion to suppress could have been raised.[14]

## B

Allen next contends that trial counsel was ineffective in regards to an Indianapolis police officer's testimony that Allen never asked why he was being taken to the police station. Allen argues that the officer's pre-trial deposition as well as the post-conviction affidavit of another officer show that Allen did ask officers why he was being taken to the station for questioning. Appellant's Br. at 66–67.[15] He contends that counsel should have impeached the officer with his deposition testimony and objected when the prosecutor referred to the officer's testimony in closing argument. *Id.*

▆▆▆ The post-conviction court made no findings of fact in regards to counsel's performance on this issue. See Appellant's Appendix at 10–11, 15–17. However, "the failure to enter specific findings of fact and conclusions of law is not reversible error." *Herman v. State*, 526 N.E.2d 1183, 1184 (Ind.1988). Instead, we review Allen's claim de novo.

▆▆▆ Our review of the record indicates that trial counsel could have made a reasonable strategic decision not to attack the officer's statement on the grounds that Allen asserts here. Counsel had two valid reasons for not impeaching the officer's testimony in this manner: (1) the fact that in a statement to police Allen said he overheard the details of the crime on the police officers' radios and (2) trial counsel's concession of Allen's involvement in the crime in an attempt to obtain a lesser conviction. First, in a statement to police, Allen said that he heard discussion of the crime on the police radio and trial counsel decided to emphasize this possibility. The officer whose testimony is in question testified that the radios were in use when he took Allen to the police station and noted that there might have been radio traffic concerning the crime. He also testified that Allen could have heard the radios for at least a brief period. Counsel revisited this issue during closing argument, reminding the jury that in the statement Allen maintained that he learned of the crime over the radio and noting that the police radio was "all the way on for a couple of seconds." (R. at 2726.) It was reasonable for trial counsel to craft a strategy in regards to the officer's testimony that was consistent with Allen's statements, which were heard by the jury. Second, trial counsel's performance in regards to the officer's testimony is consistent with counsel's decision to concede Allen's presence at Griffin's home—as well as other incriminating facts—in the hopes of obtaining a voluntary manslaughter conviction instead of a murder conviction. *See* Appellant's Appendix at 16–17, Appel-

**14.** *Cf. People v. Mitchell*, 189 Ill.2d 312, 344–45, 245 Ill.Dec. 1, 727 N.E.2d 254, 273 ("Defendant tries to revive the *Miranda* argument by relying on post-conviction affidavits that he believes help to establish that he would have been unable to make a knowing, voluntary, and intelligent waiver of his *Miranda* rights. Just as we held on direct appeal, however, the *Miranda* issue is irrelevant given our determination that any error in the admission of defendant's confession was harmless."), *cert. denied,* —— U.S. ——, 121 S.Ct. 388, 148 L.Ed.2d 299 (2000).

**15.** We dealt with a slightly different claim of perjured testimony on direct appeal. *See Allen*, 686 N.E.2d at 775.

lant's Br. at 68–69.[16] The evidence that Allen asserts here, which demonstrates that Allen might not have known why he was taken to the police station, conflicts with this theory, and it was reasonable for counsel not to attack the officer's testimony.

## C

▮▮▮▮ Allen raises several other claims of guilt phase ineffective assistance of counsel under the rubric of "[c]umulative effect of guilt phase errors." Appellant's Br. at 67. Specifically, he argues that counsel should have (1) presented evidence concerning why Allen had a certain amount of money in his possession when he was arrested; (2) pointed out the conflict in pre-trial accounts of where and how Griffin's camera had been found at the carwash where Allen worked; (3) selected a different tactic when he opted to argue that while Allen did kill Griffin, his conduct was voluntary manslaughter, not murder. Appellant's Br. at 67–69. Allen did not raise these issues in his initial petition for post-conviction relief or in any of his three amended petitions.[17] These claims are unavailable here. Issues not raised in the petition for post-conviction relief may not be raised for the first time on post-conviction appeal. *See* Ind. Post–Conviction Rule 1(8) ("All grounds for relief available

to a petitioner under this rule must be raised in his original petition."); *Howard v. State,* 467 N.E.2d 1, 2 (Ind.1984) ("It is well settled that issues which are not raised either at the trial level, on appeal, or in a post-conviction petition are waived.").

## D

Allen contends that his counsel was ineffective during the penalty phase of his trial. He contends that trial counsel should have presented evidence concerning Allen's family history, abuse during his incarceration at the Indiana Boy's School ("IBS"), and testimony from experts analyzing this evidence. Appellant's Br. at 73–78. During the post-conviction hearing, Allen presented detailed testimony on each of these points. First, he presented the post-conviction testimony of three of his sisters as well as a close friend. These witnesses testified as to Allen's difficult upbringing, including the fact that his mother[18] raised her eight children by herself with little money and that Allen served as a protector for the children, sometimes stealing so that the family would have food. Second, Allen presented testimony concerning corporal punishment inflicted on him at IBS[19] before such practices were prohibited. He presented the testi-

**16.** Allen also argues that counsel was ineffective in making this decision, but, as we hold *infra,* he has waived this claim.

**17.** Allen very briefly mentions the first two of these issues in his petition. He makes a brief reference to the third of these issues—which was not mentioned at all in the petition—in his proposed findings of fact and conclusions of law. The first two issues are not mentioned in those proposed findings and conclusions.

**18.** Allen's family members testified that his mother drank heavily on the weekends, and would occasionally not come home for several

days during these spells. They testified that they would sometimes stand outside the tavern where she drank and implore adults entering the tavern to get money from her so that they could eat. They also testified that she drank only occasionally during the week and seldom drank in front of the children. Allen's mother testified during Allen's sentencing hearing, but died prior to the post-conviction hearing.

**19.** The conditions at the Indiana Boys School during the late 1960s and early 1970s are documented in *Nelson v. Heyne,* 355 F.Supp. 451 (N.D.Ind.1972), which placed limits on the punishments Allen's evidence describes.

mony of two IBS employees and three men who were detained at IBS at the same time as Allen, all of whom testified that strappings, paddlings,[20] and slappings were part of life at IBS,[21] as was overcrowding. Third, Allen presented testimony from mental health professionals, including a social worker, a neuropsychologist, and a forensic psychologist. These witnesses detailed the difficulty of Allen's childhood and how that might have affected his behavior later in life, diagnosed him as having mental disorders, described Allen as possessing low intelligence, and postulated that Allen would pose little risk of violence in prison.

In regards to this mitigation evidence, the post-conviction court concluded that

> Trial counsel ... purposely refrained from presenting certain mitigating evidence during the penalty phase before the jury so that the State would not be able to present evidence of Allen's [previous] convictions.... These decisions by counsel were strategic decisions and not subject to any characterization of ineffectiveness of counsel.

Appellant's Appendix at 17 (emphasis omitted). It also concluded that "the information that Allen claims was not presented at his trial was available to [the trial court] through [the] pre-sentence investigation report.". *Id.* at n. 22.

The post-conviction court made certain findings of fact from which it reached this conclusion. The post-conviction court found that

Allen's prior criminal history included a *conviction* for the voluntary manslaughter of another elderly woman, Olga Cooper, during a burglary as well as a pending *charge* against Allen at the time of his trial of another murder of an elderly woman, Mrs. Hale, during the course of a burglary. Throughout all phases of Allen's trial, trial counsel ... was concerned that the evidence of petitioner's criminal history including several other felony convictions and juvenile record would reach the jury.

Appellant's Appendix at 16 (emphasis in original).

There was evidence to support the post-conviction court's findings of fact. The record reflects that Allen was convicted of eight felonies, most of them burglaries or robberies. All of the victims were middle-aged or elderly women and Allen was convicted of voluntary manslaughter in the death of an 85–year–old woman. Allen's lead trial counsel testified at a deposition that his main goal during the penalty phase was to keep the jury from learning about these crimes. He testified that he was especially worried about the voluntary manslaughter conviction, as the facts of that case resembled the murder of Griffin.[22] Counsel therefore chose to avoid a detailed mitigation case and communicated this strategy to Allen, as is reflected by Allen's statements at sentencing. Moreover, when asked about Allen's previous voluntary manslaughter conviction, Allen's expert on death penalty litigation testified that "the thing to do would be to stay

---

**20.** These forms of corporal punishment were administered to the children's bare buttocks while they bent over. IBS officials meted out these strappings and paddlings in front of large groups of children.

**21.** Two of the former IBS detainees testified that they saw IBS officials inflict such punishments on Allen on at least two occasions.

**22.** Trial counsel also testified that the prosecutors made it clear to him that they would attempt to introduce Allen's criminal history if any opening presented itself.

away from it" and not open the door to such evidence.

Having found evidence to support the post-conviction findings of fact, we next determine whether the post-conviction court could properly reach the conclusions it reached based on these findings. In making this determination, we will upset the conclusions of the post-conviction court only if the evidence as a whole "leads unerringly and unmistakably to a conclusion opposite to that reached by the trial court." *Weatherford v. State,* 619 N.E.2d 915, 917 (Ind.1993), *reh'g denied.* Because Allen asserts that trial counsel should have offered three distinct types of evidence in mitigation, we analyze the post-conviction court's conclusion in light of each form of evidence.

 First, Allen contends that trial counsel was deficient for failing to present mitigation evidence in the form of testimony from family and friends concerning the conditions in which Allen grew up. The post-conviction court concluded that such evidence would open the door to Allen's criminal record and counsel did not pursue this evidence on that ground. Appellant's Appendix at 17. At the time of Allen's trial, a defendant's criminal history was generally inadmissible as character evidence. However, "[w]hen the accused offer[ed] evidence of her own character, she open[ed] the door to the subject of her character for the trait placed in issue."

*Berkley v. State,* 501 N.E.2d 399, 400 (Ind. 1986). *See also Bond v. State,* 273 Ind. 233, 403 N.E.2d 812 (1980). Therefore, evidence of prior crimes became admissible when they were relevant to rebut a trait of good character that the defendant placed into evidence. *See Hauger v. State,* 273 Ind. 481, 483, 405 N.E.2d 526, 527 (1980). *Cf. Ashton v. Anderson,* 258 Ind. 51, 279 N.E.2d 210, 212 (1972) ("It is well recognized that a witness may be required on cross examination to answer as to prior convictions for the purpose of impeaching his credibility."). While the evidence of Allen's family history describes the difficult conditions of his childhood, it also contains numerous positive references to Allen's role as a protector of the younger children in his neighborhood and family, his role as "man of the house," his tendency to take blame for others, and his practice of stealing to feed his family. This testimony—which was intertwined with the negative aspects of Allen's youth—is a form of character evidence that could open the door to Allen's criminal history. Trial counsel's performance was not deficient for not presenting this evidence.[23] *See Canaan v. State,* 683 N.E.2d 227, 234 (Ind. 1997) ("Counsel is permitted to make strategic judgments not to present certain types of mitigating evidence, including evidence of defendant's background."), *cert. denied,* 524 U.S. 906, 118 S.Ct. 2064, 141 L.Ed.2d 141 (1998).[24]

23. Counsel's strategy here resembles *Timberlake v. State,* 690 N.E.2d 243, 261 (Ind.1997), *cert. denied,* 525 U.S. 1073, 119 S.Ct. 808, 142 L.Ed.2d 668 (1999) in that counsel minimized the amount of evidence presented during the penalty phase because of an external factor but made a plea for mercy on his client's behalf. In *Timberlake,* we held that

After an investigation into potentially mitigating evidence, a defense counsel may decide that it would be better for his client not to argue, as mitigation evidence, defendant's background history such as a history

of drug abuse and a bad family life. Instead, defense counsel may determine that the better strategy would be to attack the morality and effectiveness of the death penalty itself and inform the jury that, if sentenced to a term of years, the defendant would likely spend the remainder of his life in prison.

*Id.* (citations omitted).

24. Allen argues that while counsel might have reasonably decided not to run this risk in front of the jury, he should have called these

Second, we address whether the post-conviction court could conclude from its findings that counsel made a reasonable strategic decision not to introduce evidence of abuse that Allen suffered at IBS. The post-conviction court concluded that trial counsel made a strategic decision not to introduce this evidence because counsel believed it might open the door for the State to introduce evidence of his previous convictions. As we have previously discussed, it was well-settled at the time of Allen's trial that evidence of previous convictions was inadmissible before the jury unless Allen opened the door to them. *See Hauger*, 273 Ind. at 483, 405 N.E.2d at 527. Had Allen placed his experiences at IBS into evidence, he could have placed his entire criminal history at issue. The IBS was a juvenile correctional facility. Faced with a record that showed that Allen had been incarcerated as a juvenile but that said nothing about incarceration as an adult, the jury could infer that Allen did not have an adult criminal history. The State might well seek to rebut any inference that Allen's criminal conduct ended with the acts that led him to IBS. Because this evidence presented a risk that evidence of prior convictions would be introduced, it was reasonable for counsel to avoid evidence concerning abuse at IBS.

Finally, Allen presented post-conviction testimony from three mental health professionals—a social worker, a neuropsychologist, and a forensic psychologist. Because of their different professional qualifications, these experts presented three distinct perspectives on Allen's mental condition. Therefore, we review the testimony of each expert individually in light of the post-conviction court's conclusion that counsel made a reasonable decision to avoid such testimony.

First, social worker Marjorie Hammock presented a detailed social history of Allen. Prior to testifying, Hammock interviewed Allen's friends and family to get a complete picture of his developmental history. After discussing Allen with numerous people, she concluded that "his environment compromised his ability to develop appropriately." (R.P–C.R. at 2257.) While this conclusion might have been helpful to Allen, Hammock only reached this point in her testimony after sifting through much of the same family history evidence that was discussed *supra*. As we have already noted, counsel acted reasonably in withholding such details of Allen's family history for fear that the jury would learn about Allen's criminal history.

Second, Allen presented the testimony of Dr. Robert Heilbronner, a neuropsychologist. After performing a number of tests, Dr. Heilbronner concluded that Allen had certain mental conditions that affected his actions. First, he testified that Allen possessed several brain dysfunctions that could limit his ability to control his behavior. These dysfunctions impaired Allen's "capacity to organize [his] behavior, to plan ahead, to think abstract-

witnesses at the sentencing hearing before the judge because the evidence of the prior conviction would be contained in the pre-sentence investigation report that the judge would read. *See* Appellant's Br. at 84–85. However, counsel called several witnesses during the sentencing hearing, including Allen's mother, sister and uncle. These witnesses testified to Allen's difficult childhood, including that Allen grew up in a poor, father-less home in which he acted as a protector and that he sometimes stole so that the family would have food. Therefore counsel employed just the strategy that Allen suggests here—he avoided opening the door to the evidence of prior con victions while the case was in front of the jury, but presented mitigation evidence to the judge when that threat had passed.

ly, to anticipate the consequences of [his] actions." (R.P–C.R. at 2325.) Second, he testified that Allen had a severe learning disability. He then specifically compared this diagnosis to mental retardation.

The post-conviction court was incorrect when it concluded that this evidence could have opened the door to Allen's criminal history. There is no nexus between Allen's mental health status and his criminal history. To say that this evidence would open the door to evidence of prior convictions would improperly allow a jury to learn the details of a defendant's criminal history every time a defendant introduced a mental health diagnosis as mitigation evidence. *Cf. Roth v. State,* 550 N.E.2d 104, 106 (Ind.Ct.App.1990) (holding that defendant's testimony that he was not "a crazy person" and that he had never been treated for a mental illness did not open the door to his criminal history), *transfer denied.*

Despite the post-conviction court's erroneous conclusion, Allen is not entitled to relief because he has not demonstrated that counsel's failure to present evidence of these mental conditions was constitutional error. First, Allen's briefs make only a passing reference to his brain dysfunctions, Appellant's Br. at 78–79, and he does not present a cogent claim that counsel was ineffective for failing to present this evidence. *See* Ind. Appellate Rule 8.3(A)(7). Second, Dr. Heilbronner testified that Allen suffered from a severe learning disability that was similar to men-

tal retardation. *See generally* Appellant's Br. at 79 ("The symptomatology of Allen's disorders mimics in some respects mental retardation."). However, we held on direct appeal that the trial judge considered to our satisfaction any evidence of mental retardation and this determination acts as *res judicata* to Allen's post-conviction recharacterization of this claim as a learning disability. *See Allen,* 686 N.E.2d at 788–90.[25]

■ Finally, Dr. Mark Cunningham, a forensic psychologist, testified that Allen is a low risk for committing a violent act so long as he is incarcerated.[26] Dr. Cunningham analyzed a variety factors to determine the statistical risk that Allen would commit a violent act if incarcerated. He testified that if he had been called at Allen's trial, he would have relied in part on Allen's previous behavior while incarcerated. Therefore, any testimony regarding Allen's dangerousness in prison would have exposed his convictions to the jury and the post-conviction court was correct to conclude that counsel made a reasonable strategic decision in regards to this testimony.

■ As a final matter, Allen argues that even if trial counsel made strategic choices not to present this evidence, counsel did not make sufficient investigation to support these strategic choices. Appellant's Br. at 80. In so arguing, Allen relies on *Williams v. Taylor,* a case in

---

**25.** Allen contends that the claim of mental retardation was a misdiagnosis of his severe learning disability. Appellant's Reply Br. at 8. This claim is barred because similar evidence of Allen's struggles with learning was presented in the affidavits that were considered on remand and on direct appeal. These affidavits included discussion from school officials as to whether Allen should have been placed in special education. The affidavits also refer to tests of Allen's "general intellec-

tual functioning" and document his poor reading skills and low intelligence quotient. In light of this evidence, which was considered on remand and on direct appeal, Allen has already litigated this claim.

**26.** Dr. Heilbronner also testified that Allen's impairments would not prevent him from functioning well in prison. (R.P–C.R. at 2337.)

which the United States Supreme Court overturned a death sentence in part because of counsel's failure to investigate potential mitigation evidence. 529 U.S. 362, 395, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). The *Williams* Court found counsel ineffective because "[t]hey failed to conduct an investigation that would have uncovered extensive records graphically describing Williams' nightmarish childhood, not because of any strategic calculation but because they incorrectly thought that state law barred access to such records." *Id.* The present case is distinguishable, however, in that the record shows that counsel had a working knowledge of some of the mitigation evidence that Allen asserts on post-conviction review but made a strategic decision not to present it. Allen's counsel called several witnesses at the sentencing hearing, and this testimony demonstrates that counsel had researched Allen's background and childhood. Moreover, counsel knew that Allen was incarcerated at IBS because it was reflected on a pre-sentence report.[27] It was counsel's role to balance the value of this evidence with the damage that the prior convictions would inflict. In light of the adverse effect that evidence of similar crimes against similar victims could have on a jury, counsel acted reasonably in striking a cautious balance towards Allen's criminal history.[28]

Having concluded that Allen could not prevail on his claims of ineffective assistance of trial counsel, we conclude that the post-conviction court could reject Allen's claim of ineffective assistance of appellate counsel.

## IV

Allen contends that he was denied a panoply of procedural rights when we remanded his direct appeal to the trial court for a written sentencing order complying with the death penalty statute. Appellant's Br. at 19.[29] The remand order instructed the court to take three actions: (1) enter a written sentencing order; (2) follow the procedures enunciated in *Roark v. State,* 644 N.E.2d 565, 570 (Ind.1994), *reh'g denied, Bellmore v. State,* 602 N.E.2d 111, 128 n. 6 (Ind.1992), *reh'g denied,* and *Bivins v. State,* 642 N.E.2d 928 (Ind.1994), *cert. denied,* 516 U.S. 1077, 116 S.Ct. 783, 133 L.Ed.2d 734 (1996); and (3) consider two affidavits that—according to appellate

---

**27.** It appears from the record that whatever investigation trial counsel conducted did not include mental health professionals. However, Allen has not demonstrated constitutional error in counsel's failure to consult the type of the witnesses he offered on post-conviction review. First, trial counsel testified at a post-conviction deposition that at the time of Allen's trial, attorneys rarely consulted neuropsychologists such as Dr. Heilbronner. As for the other mental health experts, one—social worker Hammock—testified to Allen's family history to which counsel was already exposed, while the other—forensic psychologist Cunningham—offered evidence that would have opened the door to prior convictions while offering little to Allen's mitigation case. Moreover, the judge had before him a presentence investigation report that detailed Allen's criminal history, but reported no violent acts while in prison. The judge also received a series of letters in support of Allen, all of which stated that Allen did not have a violent nature.

**28.** Allen also contends that his death sentence is unreliable because of counsel's failure to introduce this mitigation evidence. Appellant's Br. at 41–43. Having found no constitutional error in counsel's failure to introduce such evidence, we similarly reject his claim that the death sentence was unreliable on these grounds.

**29.** We remanded Allen's direct appeal after it became "apparent that the record of proceedings in this case [did] not contain a written sentencing order, which is a violation of Indiana's death penalty sentencing procedure." *Allen,* 686 N.E.2d at 788 n. 32. Our opinion on direct appeal contains a detailed reproduction of the remand order. *Id.*

counsel—supported Allen's argument that he was mentally retarded and that this fact should have been considered in mitigation. The trial court entered a detailed sentencing order that complied with the mandate of our remand. *See Allen,* 686 N.E.2d at 787–90.

Allen claims that this procedure: (1) violated *Clemons v. Mississippi,* 494 U.S. 738, 110 S.Ct. 1441, 108 L.Ed.2d 725 (1990), which governs how appellate courts may treat a death sentence after determining that the sentencing court relied on an impermissible aggravating circumstance; (2) shifted the burden of proof at sentencing from the State to Allen; (3) deprived him of the right to be present during sentencing; (4) denied him his statutory right to allocution; (5) denied him the opportunity to present evidence at an adversarial hearing on sentencing; (6) violated his right to notice of sentencing; and (7) deprived him of due process of law under the federal constitution. Appellant's Br. at 19–29.

 Issues available on direct appeal may not be raised during post-conviction

review. *See Ben–Yisrayl v. State,* 729 N.E.2d 102, 108 n. 1 (Ind.2000) (citing *Rouster v. State,* 705 N.E.2d 999, 1003 (Ind.1999), *reh'g denied*), *reh'g denied.* Allen has waived these freestanding claims of error in regards to the remand order for failing to raise them on direct appeal.[30]

However, Allen also argues that his direct appeal counsel was ineffective or abandoned him in regards to the remand proceeding. Appellant's Br. at 29. The post-conviction court concluded Allen was not prejudiced by counsel's efforts during the remand. Appellant's Appendix at 15.

Allen does not claim that he suffered any prejudice during the remand that is independent of his general claims of ineffective assistance of counsel in regards to sentencing. *See* Part III–D *supra.* That is, Allen does not cite any evidence that his counsel should have attempted to introduce during the remand that he does not also argue should have been introduced during the penalty phase.[31] Because we held that Allen suffered no prejudice from his counsel's efforts at the penalty phase,[32]

---

**30.** The fact that Allen has waived these claims is reinforced by our rejection of his petition for rehearing during his direct appeal. Our direct appeal opinion addressed several issues in regards to the remand. *See Allen.* 686 N.E.2d at 787–90. In his petition for rehearing, Allen raised several more issues, including many of the claims he asserts here. We rejected Allen's claims on rehearing and repeat that rejection here.

**31.** Specifically, Allen argues that counsel should have introduced evidence that he

 suffered from mental health impairments which significantly restricted his ability to control his impulses rather than being mentally retarded. Additionally, there was evidence post-trial that Allen responded very well to incarceration. There was a wealth of evidence available to support mitigation circumstances and rebut the State's evidence of intent to commit murder.

Appellant's Br. at 31. Allen cross-references the prejudice he asserts here with his claims of ineffective assistance of counsel during the penalty phase. *See id.* (citing Appellant's Br. at 70–87.)

**32.** Allen suggests that he was completely deprived of counsel on consideration of the belated motion to correct errors and on remand and therefore we should presume that he suffered prejudice. *See* Appellant's Br. at 30 (citing *Penson v. Ohio,* 488 U.S. 75, 88, 109 S.Ct. 346, 102 L.Ed.2d 300 (1988) (presuming prejudice because "the denial of counsel in this case left petitioner completely without representation during the appellate court's actual decisional process.")). However, Allen's appellate counsel chose to file the affidavits referred to in the order and then challenged the remand process on appeal. This course of action reflects a conscious decision-making process by counsel, which should be analyzed under the general standard of *Strick-*

we similarly hold that he suffered no prejudice in the context of the remand.[33]

## V

Allen raises several claims that are either waived because they are freestanding claims of trial court error or are barred by *res judicata.* "If an issue was known and available but not raised on appeal, it is waived. If it was raised on appeal but decided adversely, it is res judicata." *Rouster.* 705 N.E.2d at 1003.

First, Allen argues that the trial court deprived him of his right to counsel by not appointing his chosen counsel as the public defender in the case.[34] Appellant's Br. at 52. As we previously stated, such freestanding claims of trial court error are unavailable on post-conviction review. *See Benefiel v. State,* 716 N.E.2d 906, 911 (Ind. 1999), *cert. denied,* 531 U.S. 830, 121 S.Ct. 83, 148 L.Ed.2d 45 (2000), *Lowery v. State,* 640 N.E.2d 1031, 1037 (Ind.1994), *cert. denied,* 516 U.S. 992, 116 S.Ct. 525, 133 L.Ed.2d 432 (1995). He also contends that the prosecutor put on perjured testimony and relied on it during closing argument. Appellant's Br. at 49. Specifically, an officer testified at trial that Allen never asked why he was being questioned. However, the officer stated in a pre-trial deposition that Allen did in fact ask why he was being questioned. This freestanding claim of error may not be raised on post-conviction review.[35]

Second, issues decided on direct appeal may not be collaterally attacked on post-conviction review. *See Ben–Yisrayl v. State,* 738 N.E.2d 253, 258 (Ind.2000), *State v. Holmes,* 728 N.E.2d 164, 168 (Ind. 2000), *cert. denied,* — U.S. ——, 121 S.Ct. 2220, 150 L.Ed.2d 212 (2001). Two issues Allen raises are barred by *res judicata.* First, he argues that his "constitutional rights were violated by the length of time it took to resolve his direct appeal issues." Appellant's Br. at 43. However, our opinion on direct appeal concluded that "Allen has not been denied due process by the length of time his appeal has taken." *Allen,* 686 N.E.2d at 785. While the time lag between the trial court's sentencing and the conclusion of Allen's direct appeal was unfortunate and largely not Allen's fault, we have already determined that the delay did not warrant a new trial or a reduced sentence. *Id.*[36] Second, he con-

---

*land* and not cases (such as *Penson*) where prejudice is presumed because counsel is completely absent from an appeal. *See Penson,* 488 U.S. at 88, 109 S.Ct. 346; *see also Strickland,* 466 U.S. at 692, 104 S.Ct. 2052 ("Actual or constructive denial of the assistance of counsel *altogether* is legally presumed to result in prejudice.") (emphasis added).

33. As a related matter, Allen argues that our denial of his belated motion to correct errors interfered with counsel and rendered his performance ineffective because he did not have an opportunity to develop a record. Appellant's Br. at 38–39. Similarly, he argues that counsel was rendered ineffective by the limited scope of the remand order and its tight deadline. *Id.* at 40–41. Allen again fails to assert that counsel would have presented any evidence during the belated motion to correct errors or the remand that he did not also

argue should have been presented at the penalty phase. Having already determined that Allen could not demonstrate constitutional error in counsel's choice not to investigate and present such evidence at the penalty phase, we conclude that he has not shown error here.

34. Allen initially hired private counsel, who subsequently withdrew because Allen was not able to afford his fees. The court appointed two other attorneys to serve as trial counsel.

35. We addressed this claim in terms of ineffective assistance of counsel *supra.*

36. This post-conviction appeal follows Allen's direct appeal by roughly three and a half years, which is not out of the ordinary in death penalty cases. *See, e.g., State v. Holmes,* 728 N.E.2d 164 (Ind.2000) (four-year

tends that the prosecutor committed misconduct by putting on purportedly false testimony and relying on it in closing argument. Specifically, he argues that two officers lied on the stand when they said that they had not provided details of the murder before Allen began to discuss it. Appellant's Br. at 50. However, we decided this precise issue adversely to Allen on direct appeal. *Allen,* 686 N.E.2d at 775.

## Conclusion

We affirm the post-conviction court's denial of Allen's petition for post-conviction relief.

SHEPARD, C.J., and DICKSON, BOEHM, and RUCKER, JJ., concur.

delay between appeals), *cert. denied,* —— U.S. ——, 121 S.Ct. 2220, 150 L.Ed.2d 212 (2001); *Williams v. State,* 724 N.E.2d 1070, (Ind. 2000) (three-and-one-half year delay between appeals), *cert. denied,* —— U.S. ——, 121 S.Ct. 886, 148 L.Ed.2d 793 (2001); *Miller v. State,* 702 N.E.2d 1053 (Ind.1998) (slightly more than five year delay between appeals), *cert. denied,* 528 U.S. 1083, 120 S.Ct. 806, 145 L.Ed.2d 679 (2000).