**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Apr 10 2013, 9:10 am

CLERK
of the supreme court,
court of appeals and
tax court

APPELLANT PRO SE:

**TIMOTHY MILLER**
Carlisle, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**CYNTHIA L. PLOUGHE**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| TIMOTHY MILLER, ) | |
| ) | |
| Appellant-Petitioner, ) | |
| ) | |
| vs. ) | No. 06A04-1211-PC-591 |
| ) | |
| STATE OF INDIANA, ) | |
| ) | |
| Appellee-Respondent. ) | |

APPEAL FROM THE BOONE CIRCUIT COURT
The Honorable Rebecca S. McClure, Judge
Cause No. 06C01-1205-PC-135

**April 10, 2013**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BARNES, Judge**

## Case Summary

Timothy Miller appeals the post-conviction court's denial of his petition for post-conviction relief.  We affirm.

## Issue

Miller raises one issue, which we restate as whether he received ineffective assistance of trial counsel.

## Facts

The facts, as detailed in Miller's direct appeal, follow:

> In early 2007, Detective Mike Beard of the Boone County Sheriff's Department received a report that Miller had been molesting his step-daughter, H.G., who was born on November 15, 1989.  Ultimately, H.G. told Detective Beard that her step-father, Miller, had been molesting her for years and was the father of her child, who was born on May 4, 2006.  H.G. told Detective Beard that Miller had threatened her with violence if she said anything about the abuse. Detective Beard obtained DNA samples from H.G., her child, and Miller.  The child's DNA revealed that she inherited DNA from both H.G. and Miller, and tests determined that there was a 99.99% chance that Miller was the child's father.
>
> At trial, H.G. testified that the first time Miller had sex with her was when she was twelve years old and detailed what she was wearing and the circumstances of the first molestation.  H.G. stated that Miller continued to molest her for several years, first in Miller's apartment, later at her mother's house, and sometimes in the sleeper cab of his truck.
>
> H.G. testified that when she told Miller she was pregnant, he told her to get an abortion, but H.G. objected. Miller later told H.G. that she should tell people that a recently deceased friend was the father of her child.  H.G. did initially tell her mother that story, and H.G.'s mother repeated that story to H.G.'s siblings.  Miller continued to attempt to have intercourse with H.G. while she was pregnant.
>
> Dr. Robert McCarty was the obstetrician/gynecologist who treated H.G.  Dr. Ted Winkler, Dr. McCarty's partner,

saw H.G. on February 27, 2006, and Dr. McCarty saw her on April 13, 2006. The doctors determined on H.G.'s first visit that the baby was likely conceived in September 2005 and was due in June 2006. However, a March 2006 ultrasound revealed that the baby was due in May 2006. Based upon ultrasound measurements, Dr. McCarty estimated that the baby was conceived approximately on August 14, 2005, with a range of error from late July to early September. H.G.'s baby was born on May 4, 2006. In Dr. McCarty's opinion, H.G. was fifteen years old when the baby was conceived.

Miller v. State, No. 06A01-0810-CR-487, slip op. at 2-3 (Ind. Ct. App. May 6, 2009), trans. denied.

In 2007, the State charged Miller with Class A felony child molesting and Class B felony sexual misconduct with a minor. A jury found Miller guilty as charged. The trial court sentenced Miller to concurrent sentences of forty years for the child molesting conviction and fifteen years for the sexual misconduct with a minor conviction. We affirmed Miller's convictions and sentences on direct appeal.

In 2012, Miller filed a petition for post-conviction relief, arguing that his trial counsel was ineffective. Miller argued in part that his trial counsel failed to present evidence that Miller first had sexual intercourse with H.G. after she turned fourteen years old rather than before she was fourteen. According to Miller, that evidence would have precluded his Class A felony child molesting conviction. After a hearing, the post-conviction court entered findings of fact and conclusions thereon denying Miller's petition for post-conviction relief. Miller now appeals.

3

## Analysis

Miller challenges the denial of his petition for post-conviction relief. A court that hears a post-conviction claim must make findings of fact and conclusions of law on all issues presented in the petition. Pruitt v. State, 903 N.E.2d 899, 905 (Ind. 2009) (citing Ind. Post-Conviction Rule 1(6)). "The findings must be supported by facts and the conclusions must be supported by the law." Id. Our review on appeal is limited to these findings and conclusions. Id. Because the petitioner bears the burden of proof in the post-conviction court, an unsuccessful petitioner appeals from a negative judgment. Id. (citing P-C.R. 1(5)). "A petitioner appealing from a negative judgment must show that the evidence as a whole 'leads unerringly and unmistakably to a conclusion opposite to that reached by the trial court.'" Id. (quoting Allen v. State, 749 N.E.2d 1158, 1164 (Ind. 2001), cert. denied). Under this standard of review, "[we] will disturb a post-conviction court's decision as being contrary to law only where the evidence is without conflict and leads to but one conclusion, and the post-conviction court has reached the opposite conclusion." Id.

Miller argues that he received ineffective assistance of trial counsel. To prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate both that his or her counsel's performance was deficient and that the petitioner was prejudiced by the deficient performance. Ben-Yisrayl v. State, 729 N.E.2d 102, 106 (Ind. 2000) (citing Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984)), cert. denied). A counsel's performance is deficient if it falls below an objective standard of reasonableness based on prevailing professional norms. French v. State, 778 N.E.2d 816,

4

824 (Ind. 2002). To meet the appropriate test for prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Id. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694, 104 S. Ct. at 2068. Failure to satisfy either prong will cause the claim to fail. Grinstead v. State, 845 N.E.2d 1027, 1031 (Ind. 2006). Most ineffective assistance of counsel claims can be resolved by a prejudice inquiry alone. Id.

On appeal, Miller argues that his trial counsel should have presented evidence that he did not lease his apartment where the first assault occurred until January 2003. According to Miller, this evidence would have established that H.G. was not assaulted in 2001 as she testified during the trial. The post-conviction court noted that Miller had submitted two inconsistent leases during post-conviction proceedings:

> 32.    The Lease tendered at post-conviction hearing as Petitioner's Exhibit 5, states on page one (1) that Petitioner's lease with Parkview Apartments covered a period of twenty four (24) months from January 18, 2003, to January 31, 2005. On page three (3) of Petitioner's Exhibit 5, the lease appears to have been signed by the Petitioner on January 18, 2003. It is obvious that the 2003 date on page three (3) of Petitioner's Exhibit 5 was changed from 2002 to 2003 at some time.

> \* \* \* \* \*

> 35.    On August 24, 2012, Miller submitted a signed Parkview Apartment Lease Agreement ("Lease") together with the Affidavit of Attorney Richard Milam. The lease submitted on August 24, 2012, differs from the lease offered at post-conviction hearing in July. The later submitted lease states that

5

the lease was to cover the twelve (12) month period from January 18, 2003, through January 18, 2004. It is obvious that the dates 2003 and 2004 have been altered. On page three (3) of the Lease submitted on August 24, 2012 it appears that the Petitioner signed the Parkview Lease on January 18, 2002. This number does not appear to have been altered.

App. pp. 12-13. In its conclusions, the trial court found:

51.   The Lease Agreement tendered by Petitioner at post-conviction hearing and his August 24, 2012, submission are not the same. Further, on page three (3) of the Lease Agreement tendered by post-conviction counsel on August 24, 2012, the lease appears to have been executed in January 2002.

52.   In January 2002, [H.G.] was twelve (12) years of age.

53.   Given the date on the Lease, and that [H.G.] would have been twelve (12) years of age at that time, the Court cannot conclude that production of the Parkview Apartment Lease at trial would have likely resulted in a different outcome. Had the Lease been admitted at trial the impact of that Lease, given the date of execution, is highly questionable.

\* \* \* \* \*

55.   The Court finds that [Miller's counsel's] failure to offer the Lease Agreement from Parkview Apartments does not demonstrate deficient performance.

Id. at 16-17.

The offense of child molesting is governed by Indiana Code Section 35-42-4-3, which provides: "A person who, with a child under fourteen (14) years of age, performs or submits to sexual intercourse or deviate sexual conduct commits child molesting . . . ." The offense is a Class A felony if committed by a person at least twenty-one years old.

6

H.G. was born on November 15, 1989, and she turned fourteen years old on November 15, 2003. She testified that Miller started molesting her at his apartment in 2001 when she was twelve years old. However, H.G.'s mother testified that Miller moved into his apartment in April 2003. Based on the lease agreements submitted during post-conviction proceedings, Miller argues that he lived in the apartment beginning in January 2003. The post-conviction court analyzed the two competing lease agreements and determined that one of the leases indicates that Miller lived in the apartment beginning in January 2002, when H.G. was twelve years old. Even if we accept Miller's argument that he did not move into the apartment until January 2003, H.G. would have been thirteen years old for the majority of Miller's stay in that apartment. Further, H.G. became pregnant in approximately August 2005 when she was fifteen years old, and she testified that Miller had been molesting her for several years before the birth of her child in May 2006.

Miller has failed to demonstrate a reasonable probability that, but for trial counsel's failure to offer the lease into evidence, the result of the proceeding would have been different. We conclude that the post-conviction court was correct that, even if Miller's trial counsel had offered the lease agreements as evidence at his trial, the impact of the lease at trial was "highly questionable." App. p. 16. The post-conviction court concluded that Miller's trial counsel's performance was not deficient and, even if it was deficient, "the actions/omissions of trial counsel did not prejudice" Miller. Id. at 18. We cannot say the post-conviction court's conclusion is clearly erroneous.

7

**Conclusion**

The post-conviction court's denial of Miller's petition for post-conviction relief is not clearly erroneous. We affirm.

Affirmed.

NAJAM, J., and BAILEY, J., concur.