The STATE of Ohio, Appellant,

v.

BLACKWELL, Appellee.

[Cite as *State v. Blackwell,* 159 Ohio App.3d 790, 2005-Ohio-922.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 20556.

Decided March 4, 2005.

Carley J. Ingram, Assistant Montgomery County Prosecuting Attorney, for appellant.

Glen H. Dewra, Public Defender, for appellee.

WOLFF, Judge.

{¶ 1} Plaintiff-appellant, the state of Ohio, appeals from a trial court's decision suppressing evidence seized from defendant-appellee, Byron Blackwell. Because we agree with the state that the trial court should not have suppressed evidence seized from Blackwell's backpack, we reverse the decision of the trial court and remand this case to the trial court for further proceedings.

{¶ 2} Early on the morning of January 30, 2004, Dayton Police Officers Fuller and Reynolds were dispatched to 4339 Breezewood Avenue on a complaint that gun shots had been fired into the home. Upon arrival, the officers discovered that a bullet had passed through the window of a bedroom occupied by Louis Stewart. The officers spoke with another occupant of the home, Aaron Brown, about a possible suspect, but Brown was unable to identify any suspects at that time.

{¶ 3} Evidentiary technician Officer Sawmiller also responded to the scene. In the snow outside the home, Officer Sawmiller found footprints leading toward and away from the house. He also found a single shell casing at the point where the footprints were closest to the house. Officers Sawmiller and Fuller began to follow the footprints leading away from the house. The footprints ended approximately two blocks away at 2527 Greenbrier. Officer Fuller returned to the scene of the shooting and asked Brown whether anyone at the Greenbrier address might have been the shooter. Brown said the only person that he could think of was a man named Byron.

{¶ 4} Officers Fuller and Reynolds went to the Greenbrier house to investigate whether anyone at that address might have been involved in the shooting. The officers knocked on the door, and a mentally disabled woman answered. When the officers asked if they could speak to someone in the house, she offered to get her father. Marcus Blackwell soon came to the door, and the officers asked

whether anyone named Byron lived there. Marcus responded that his grandson, Byron, lived there, but he did not know whether Byron was home. Marcus gestured and told the officers, "You can come with me." Marcus led the officers to a door in the basement and knocked, but there was no response. Marcus opened the door and turned on the light, and the officers could see a young man apparently asleep on the bed. Marcus yelled at Byron to wake up, and he opened his eyes as the officers entered the room.

{¶ 5} Officer Fuller told Byron Blackwell that the officers wanted to talk to him but that they were going to check for weapons first. He asked whether there were any weapons in the room, and Blackwell said, "No." The officers began to search the area within Blackwell's reach. Officer Fuller saw a backpack sitting a couple of feet from the bed. Inside an open pocket at the top of the backpack, he saw three bullets, in plain view. Officer Fuller then picked up the backpack and searched it, finding a handgun inside.

{¶ 6} At the same time, at the foot of the bed upon which Blackwell was found, Officer Reynolds saw a shoe lying on its side. He noted that the tread pattern included a distinct curve that was the same as the curved pattern that he had seen in the snow. The shoe was also seized as evidence. Officer Fuller placed Blackwell under arrest.

{¶ 7} Blackwell filed a motion to suppress all of the evidence seized at the time of his arrest. The trial court found that the officers had consent to enter the home at 2527 Greenbrier Avenue, including Blackwell's bedroom. The court held that the shoe was properly seized but suppressed the gun and bullets, concluding that "the search exceeded the scope of the consent to enter * * *, and neither Byron Blackwell nor Marcus Blackwell took any action which indicated that either gentleman posed a threat which would have made the preemptive search reasonable." The state filed a timely notice of appeal.

{¶ 8} The state's assignment of error:

{¶ 9} "The trial court erred in finding that the police officers violated Blackwell's constitutional rights by seizing the gun and bullets that they found in Blackwell's backpack."

{¶ 10} In its sole assignment of error, the state argues that the trial court erred in suppressing the gun and bullets found in the backpack near Blackwell's bed. When deciding a motion to suppress evidence, an appellate court is bound to accept the trial court's factual findings if they are supported by competent and credible evidence, and the appellate court must then independently determine as a matter of law whether the minimum constitutional standard has been met. *State v. Williams* (1993), 86 Ohio App.3d 37, 41, 619 N.E.2d 1141. Because we

agree that the trial court erred in suppressing the gun and bullets, we reverse the decision of the trial court.

{¶ 11} When the police officers stood in Byron Blackwell's bedroom, they knew that he was likely the person who had just shot into the house on Breezewood. They had followed the footprints from the Breezewood house to Blackwell's house. The officers also knew that a man named Byron, who lived on Breezewood, had some kind of trouble with one of the victims. Thus, the officers had every reason to believe that Blackwell was the shooter and that his gun might well be within his reach in his bedroom. Accordingly, the officers, for their own safety, were entitled to search the area around Blackwell for weapons. *State v. Rutledge* (Feb. 27, 1998), Montgomery App. No. 16577, 1998 WL 184641. This is particularly true during an in-home encounter, which is inherently more dangerous than one that occurs in a public place. See, e.g., *State v. Lyons* (1992), 83 Ohio App.3d 525, 533, 615 N.E.2d 310. Moreover, contrary to the trial court's opinion, the officers were justified in conducting such a protective search even without any overt action on the part of either Blackwell or his grandfather.

{¶ 12} When the officers began searching the area closest to Blackwell, Officer Fuller saw the bullets in plain view in the open pocket at the top of the backpack. Probable cause that an item in plain view contains contraband justifies a search of that object. *Arizona v. Hicks* (1987), 480 U.S. 321, 107 S.Ct. 1149, 94 L.Ed.2d 347. Because the officers were investigating a shooting that they had reason to believe that Blackwell had just committed, they had probable cause to immediately associate the bullets with criminal activity. See, e.g., *State v. Halczyszak* (1986), 25 Ohio St.3d 301, 25 OBR 360, 496 N.E.2d 925, paragraph three of the syllabus. Having seen the bullets in plain view, Officer Fuller had probable cause to justify searching the rest of the backpack for the gun, and exigent circumstances permitted him to do so without first obtaining a search warrant.

{¶ 13} For these reasons, the trial court erred in suppressing the gun and bullets seen in the open pocket of the backpack near Blackwell's bed. Therefore, we reverse the decision of the trial court and remand this case for further proceedings consistent with this opinion.

Judgment reversed.

BROGAN, P.J., and DONOVAN, J., concur.