**Gerald REED, Appellant–Petitioner,**

v.

**STATE of Indiana, Appellee–Respondent.**

**No. 49A04–0408–PC–444.**

Court of Appeals of Indiana.

April 22, 2005.

Transfer Granted June 21, 2005.

---

Susan K. Carpenter, Public Defender of Indiana, Cassandra J. Wright, Deputy Public Defender, Indianapolis, IN, Attorneys for Appellant.

Steve Carter, Attorney General of Indiana, Michael Gene Worden, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

SHARPNACK, Judge.

Gerald Reed appeals the post-conviction court's denial of his petition for post-conviction relief. Reed raises two issues, which we restate as:

I.  Whether Reed waived his freestanding claim that the trial court abused its discretion by sentencing Reed to consecutive sentences; and

II. Whether Reed received the effective assistance of trial and appellate counsel.

We affirm.

The relevant facts follow. On November 1, 1995, while Indianapolis Police Officers Marlene Neitzel, Michael Roach, and William Beachum were investigating a disturbance, Reed approached the scene in his car. Reed drove between Officer Neitzel and Officer Roach's parked police cars, and Reed's car became wedged between the police cars. When another officer arrived to investigate the accident, Officer Neitzel moved her car and Reed backed his car up. However, Reed suddenly drove forward again and sped away from the scene. Officers Neitzel, Roach, and Beachum pursued Reed. A couple of minutes later, Reed stopped his car, opened his driver's side door, and fired one shot in the direction of Officers Roach and Beachum. Reed drove another block, slowed his car to almost a stop, and fired two shots at Officer Beachum. The chase continued for approximately eight more minutes until the officers stopped Reed's car with stop sticks. The entire chase lasted for approximately ten minutes.

The State charged Reed with one count of attempted murder for shooting at Officer Roach, one count of attempted murder for shooting at Officer Beachum, and one count of carrying a handgun without a license as a class A misdemeanor. The State also enhanced the handgun charge to a class D felony. After a bench trial, the trial court found Reed guilty as charged. The trial court sentenced Reed to forty years for each of the two attempted murder convictions to be served consecutively and a concurrent sentence of four years on the handgun conviction. Reed appealed his convictions and argued that he did not waive his right to a jury trial, that the trial court did not adequately explain its reasons for enhancing the sentences and ordering them to be consecutive, and that the sentence was manifestly unreasonable. *Reed v. State,* No. 49A05–9610–CR–438, 688 N.E.2d 436 (Ind.Ct.App. Dec.22, 1997), *trans. denied.* We affirmed Reed's convictions and sentences. *Id.*

Reed filed a petition for post-conviction relief, and after an evidentiary hearing, the post-conviction court entered the following findings of fact and conclusions thereon:

### *Findings of Fact*

1.  On November 1, 1995, [Reed] attempted to drive between two

parked police cars and his car became stuck. [Reed]'s Exhibit 1 at 99, 109, 110–11, 140, 142. An accident police car was called to the scene, and [Reed] was instructed to back his car out of the jam. *Id.* at 17, 118–19, 154, 236. [Reed] then fled the area. *Id.* at 119, 154–55. Fully marked police cars followed him on a chase that lasted approximately ten minutes. *Id.* at 99, 127, 136, 187, 213. At one point, [Reed] completely stopped his vehicle and opened his car door and fired a gunshot at Officer Michael Roach. *Id.* at 171–74, 176, 203–04. [Reed] then closed the car door and began driving again. *Id.* at 213. Approximately five seconds later, [Reed] again slowed his car down significantly and fired two shots in the direction of Officer William Beachum. *Id.* at 207, 208, 210. Stop sticks were ultimately thrown down, and [Reed] was apprehended. *Id.* at 214.

2. On November 2, 1995, the State charged [Reed] with the attempted murder of Officer Roach and carrying a handgun without a license. *Id.* at 15–17. At Officer Beachum's request, the State filed an amended charging information on January 16, 1996, adding a charge of attempted murder of Officer Beachum. *Id.* at 49–51, 222–23.

3. The Court appointed Stephen Laudig to represent [Reed], but Alex Murphy took over the case in January 1996. *Id.* at 27, 39.

4. Following a bench trial, on March 18, 1996, the Court convicted [Reed] of both counts of attempted murder and the enhanced carrying a handgun without a license. *Id.* at 335.

5. On April 16, 1996, the Court held [Reed]'s sentencing hearing. In arguing for an enhanced sentence, the State pointed out that the shots occurred at two separate places and two separate points in time and should be consecutive. *Id.* at 373–74. The Court sentenced [Reed] to an aggregate 80–year term of incarceration. *Id.* at 377–78. The Court ordered both attempted murder convictions be run consecutively.

6. Patricia McMath filed [Reed]'s direct appeal which raised the following issues: a) whether he waived his right to a jury trial; b) whether the Court's sentencing was adequate; and c) whether the sentences are manifestly unreasonable. *Reed v. State*, No. 49A05–9610–CR–438, slip opinion, p. 2, 688 N.E.2d 436 (Ind. Ct.App. December 22, 1997). The Court of Appeals affirmed [Reed]'s convictions and sentence in a memorandum decision. *Id.*

7. On September 14, 2000, [Reed] filed his *pro se* Petition for Post–Conviction Relief and requested and received representation from the State Public Defender. The State answered the Petition on October 2, 2000.

8. On February 23, 2004, [Reed] by counsel filed an Amended Petition in which he substituted the following issues for those raised in his *pro se* Petition: a) the Court erred in imposing consecutive sentences; and b) he received ineffective assistance of trial and appellate counsel. The State responded to the amendment on March 1, 2004.

9. On April 27, 2004, the Court held [Reed]'s evidentiary hearing. [Reed] presented the record of proceedings, the briefs of both appellant

and appellee, the memorandum decision and an affidavit from Patricia McMath. The Court took judicial notice of its file at the State's request and ordered the parties to submit proposed findings of fact and conclusions of law by May 27, 2004.

### Conclusions of Law

1. Post-conviction relief is a collateral attack on the validity of a criminal conviction and the petitioner carries the burden of proof. *Timberlake v. State,* 753 N.E.2d 591, 597 (Ind. 2001). This collateral challenge to the conviction is limited to the grounds enumerated in the post-conviction rules. *Id.* (citing Ind. Post–Conviction Rule 1(1)). The post-conviction procedure, however, is not a "super-appeal," and not all issues are available. *Id.* "If an issue was known and available, but not raised on direct appeal, it is waived. If it was raised on appeal, but decided adversely, it is *res judicata.*" *Id.* (quoting *Timberlake v. State,* 753 N.E.2d 591, 597 (Ind.2001)). Thus, in order to grant relief, the Court must find that the preponderance of the evidence proved that [Reed] is entitled to relief.

2. [Reed] is not entitled to any review on his freestanding claims that the Court committed a sentencing error. *Taylor v. State,* 780 N.E.2d 430 (Ind. Ct.App.2002) (citing *Bunch v. State,* 778 N.E.2d 1285, 1289 (Ind.2002)), [*reh'g denied, trans. denied*]. Because "the sentencing issue *could have been* presented on direct appeal but was not ... this issue is not available to [Petitioner] upon a petition for post-conviction relief." *Taylor,* 780 N.E.2d at 435 (citing *Woods v. State,* 701 N.E.2d 1208, 1213 (Ind. 1998) (emphasis in original)). To

the extent that this claim is different from his appellate challenge to his sentence, [Reed] procedurally defaulted it by not raising it in his direct appeal.

3. Review of [Reed]'s sentencing claim is barred by *res judicata.* "[I]ssues litigated adversely to the defendant are *res judicata.*" *Allen v. State,* 749 N.E.2d 1158, 1163 (Ind.2001). Because the consecutive sentencing order was raised and decided against him during his direct appeal, *Reed,* slip op. p. 9–10, such claim is barred by the doctrine of *res judicata.* *Timberlake v. State,* 753 N.E.2d 591, 597 (Ind.2001). [Reed] cannot avoid the doctrine of *res judicata* by claiming that his counsel was ineffective. "A petitioner for post-conviction relief cannot escape the effect of claim preclusion merely by using different language to phrase an issue and define an alleged error." *Ben–Yisrayl v. State,* 738 N.E.2d 253, 258 (Ind.2000). Therefore, [Reed] is entitled to no relief on any claim that was decided against him, even if he now claims that counsel wad ineffective in the presentation of said issue. The Court of Appeals reviewed the consecutive sentence order and found no error. *Reed,* slip op., p. 9–10. [Reed] is not entitled to another review.

4. The Court finds that [Reed] is also not entitled to relief on his claim that trial and appellate counsel performed ineffectively. The standard for gauging trial and appellate counsels' performance comes from *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *Allen v. State,* 749 N.E.2d 1158, 1166–67 (Ind.2001). There-

fore, "[t]o prevail on an ineffective assistance of counsel claim, [the petitioner] must show both deficient performance and resulting prejudice." *Id.* The two prongs are separate and independent inquiries, and if a court can "dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice ... that course should be followed." *Timberlake v. State,* 753 N.E.2d 591, 603 (Ind.2001) (citing *Williams v. State,* 706 N.E.2d 149, 154 (Ind.1999)) (quoting *Strickland,* 466 U.S. at 697[, 104 S.Ct. 2052]). "Prejudice exists when a defendant shows 'there is a reasonable probability [i.e., probability sufficient to undermine confidence in the outcome] that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* (quoting *Strickland,* 466 U.S. at 694[, 104 S.Ct. 2052]).

a. **Trial Counsel.** The Court finds that trial counsel rendered effective assistance. [Reed] claims that trial counsel was ineffective for failing "to object to the trial court's imposition of consecutive sentences." Amendment ¶ 9(b). Counsel is not required to object to the Court's sentence in order to preserve it for review. "We may correct sentencing error by the trial court on appeal even though the issue was not raised below." *Slinkard v. State,* 807 N.E.2d 127 (Ind.Ct.App. April 28, 2004). Therefore, the Court finds neither deficient performance nor prejudice from trial counsel.

b. **Appellate Counsel.** The same analysis holds true with appellate counsel, and the Court finds [Reed] is entitled to no relief. The question, however, is not whether [Reed] is entitled to relief on the merits of his claim. "Instead, the appropriate question on petition for post-conviction relief is whether appellate counsel's performance, viewed in its entirety, denied [Petitioner] his Sixth Amendment right to counsel." *Martin v. State,* 760 N.E.2d 597, 600 (Ind.2002) (citing *Bieghler v. State,* N.E.2d 188, 193–94 (Ind.1997)).

[Reed] must prove that—taken as a whole—appellate counsel's performance fell "outside the wide range of professionally competent assistance." *Id.* Before addressing the individual claims, the Court finds that McMath's affidavit and the brief she filed on [Reed]'s behalf proves that: a) it is her practice to read the record, consult with trial counsel, and consult with her client; and b) she raised two claims based on her correct understanding of the law. Consequently, the Court finds that McMath's performance constituted professionally competent assistance.

Our Supreme Court has recognized three types of ineffective assistance of appellate counsel claims: a) denial of access to appeal; b) failure to present issues; and c) failure to present issues well. *Wrinkles v. State,* 749 N.E.2d 1179, 1203 (Ind.2001) (citing *Bieghler v. State,* 690 N.E.2d 188, 193–95 (Ind. 1997)). As the court stated, "Claims of inadequate presentation of certain issues, when such were not deemed waived in the direct appeal, are the most difficult for convicts to advance and reviewing tribunals to support." *Bieghler,* 690 N.E.2d at 195. This is so for two reasons. First, the issue has already been reviewed by an appellate court and "most implicates concerns of finality, judicial economy, and repose while least affecting assurance of a valid conviction." *Id.* Second, the appellate court is not confined by arguments presented by

appellate counsel and performs its own independent review of the record and case law in reviewing the claim. *Id.* When reviewing an appellate counsel's strategic decision to include or exclude issues, courts should be particularly deferential "unless such a decision was unquestionably unreasonable" because deciding which issues to raise on appeal is one of the most important strategic decisions of appellate counsel. *Stevens v. State,* 770 N.E.2d 739, 760 (Ind.2002). The Court of Appeals reviewed the Court's imposition of consecutive sentences and found no error. *Reed,* slip op., p. 10.

To the extent [Reed] is claiming that McMath did not raise this issue at all, [Reed] has also not met his burden. To prove ineffective assistance of appellate counsel in that instance, a defendant must "show from the information available in the trial record or otherwise known to appellate counsel that appellate counsel failed to present a significant and obvious issue and that this failure cannot be explained by any reasonable strategy." *Id.* (quoting *Ben–Yisrayl v. State,* 738 N.E.2d 253, 261 (Ind.2000)). McMath's affidavit states that she "raise[s] all viable appellate issues supported by the record and relevant authority. [She does] not deliberately omit any meritorious issue." Affidavit ¶ 4.

[Reed] is entitled to no relief on either of these claims because the Court did not err in imposing consecutive sentences because the crimes were not a single episode of criminal conduct. An episode of criminal conduct is "offenses or a connected series of offenses that are closely related in time, place, and circumstance." Ind.Code § 35–50–1–

2(b). In *Smith v. State,* 770 N.E.2d 290 (Ind.2002), our Supreme Court analyzed whether multiple forgeries over a period of less than three hours were a single episode of criminal conduct for purposes of Indiana Code § 35–50–1–2. In concluding that the crimes were not part of a single episode, the Court found that the crimes were not simultaneous nor were they contemporaneous with each other and that each of the crimes could be recounted without reference to the others. *Id.* at 294. [Reed] is correct that at the time of his conviction and sentencing Indiana Code § 35–50–1–2 limited consecutive sentencing for an episode of criminal conduct to certain crimes delineated as crimes of violence. [Reed] is also correct that at that time, attempted murder was not listed as a crime of violence.[1] *Ellis v. State,* 736 N.E.2d 731, 736 (Ind.2000).

However, this entitles [Reed] to no relief because evidence was introduced at his trial that the two attempted murders were separate by both time and place, if not by circumstance. [Reed] completely stopped his car and opened the door to fire the first shot. [Reed] then resumed driving and approximately five seconds later; he slowed the car and fired two more shots. An "episode means an occurrence or series of occurrences and developments which may be viewed as distinctive and apart although part of a larger or more comprehensive series." *Harris v. State,* 749 N.E.2d 57, 60 (Ind.Ct.App.2001) (quoting *Tedlock v. State,* 656 N.E.2d 273, 276 (Ind.Ct.App. 1995)). Because each of [Reed]'s convictions stemmed from separate episodes of criminal conduct, the imposition of consecutive sentences was within the Court's discretion. Because [Reed] can

---

1. Indiana Code § 35–50–1–2 was amended in 2001 to include attempted murder in the list

of crimes of violence exempt from the consecutive sentencing limitations.

prove neither deficient performance nor prejudice, he is entitled to no relief.

5. The law is with the State and against the [Reed].

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED by the Court that the Petition for Post–Conviction Relief is hereby DENIED.

Appellant's Appendix at 68–75 (footnote in original).

■■■ Before discussing Reed's allegations of error, we note the general standard under which we review a post-conviction court's denial of a petition for post-conviction relief. The petitioner in a post-conviction proceeding bears the burden of establishing grounds for relief by a preponderance of the evidence. *Fisher v. State,* 810 N.E.2d 674, 679 (Ind.2004); Ind. Post–Conviction Rule 1(5). When appealing from the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment. *Id.* On review, we will not reverse the judgment unless the evidence as a whole unerringly and unmistakably leads to a conclusion opposite that reached by the post-conviction court. *Id.* Further, the post-conviction court in this case entered findings of fact and conclusions thereon in accordance with Indiana Post–Conviction Rule 1(6). *Id.* "A post-conviction court's findings and judgment will be reversed only upon a showing of clear error—that which leaves us with a definite and firm conviction that a mistake has been made." *Id.* In this review, we accept findings of fact unless clearly erroneous, but we accord no deference to conclusions of law.

*Id.* The post-conviction court is the sole judge of the weight of the evidence and the credibility of witnesses. *Id.*

## I.

The first issue is whether Reed waived his freestanding claim that the trial court abused its discretion by sentencing Reed to consecutive sentences. Reed argues that his eighty-year sentence resulting from two consecutive forty-year sentences for attempted murder violates Ind.Code § 35–50–1–2(c) (1995),[2] which in general provides that, except for crimes of violence, the total of the consecutive terms of imprisonment "to which a defendant is sentenced for felony convictions arising out of an episode of criminal conduct shall not exceed the presumptive sentence for a felony which is one (1) class of felony higher than the most serious of the felonies for which the person has been convicted." The offense of attempted murder was not listed as a crime of violence at the time of Reed's offense, *see Fight v. State,* 768 N.E.2d 881, 882 (Ind.2002), and Reed argues that his convictions arose out of an episode of criminal conduct. Thus, Reed contends that he should have been sentenced only to fifty-five years, the presumptive sentence for murder, the next higher class of felony. *See* Ind.Code § 35–50–2–3 (1995).[3]

■■■ The post-conviction court found, in part, that Reed was not entitled to review on his freestanding claim.[4] We agree. Our supreme court has held that in "post-conviction proceedings, complaints that

2. Subsequently amended by Pub.L. No. 203–1996, § 7 (eff. July 1, 1996); Pub.L. No. 219–1997, § 1 (eff. July 1, 1997); Pub.L. No. 228–2001, § 6 (eff. July 1, 2001); Pub.L. No. 266–2003, § 2 (eff. July 1, 2003).

3. Subsequently amended by Pub.L. No. 117–2002, § 1 (eff. July 1, 2002).

4. The post-conviction court also found that review of Reed's freestanding sentencing claim was barred by res judicata. We need not address this issue because we conclude that Reed waived his freestanding claim by failing to raise the issue on direct appeal.

something went awry at trial are generally cognizable only when they show deprivation of the right to effective counsel or issues demonstrably unavailable at the time of trial or direct appeal." *Sanders v. State,* 765 N.E.2d 591, 592 (Ind.2002); *see also Canaan v. State,* 683 N.E.2d 227, 235–236 n. 6 (Ind.1997) (holding that the availability of the fundamental error exception as an exception to the waiver rule in post-conviction proceedings is generally limited to "deprivation of the Sixth Amendment right to effective assistance of counsel, or ... an issue demonstrably unavailable to the petitioner at the time of his [or her] trial and direct appeal"), *reh'g denied, cert. denied,* 524 U.S. 906, 118 S.Ct. 2064, 141 L.Ed.2d 141 (1998). Here, Reed's claim regarding Ind.Code § 35–50–1–2(c) was available at the time of Reed's direct appeal. Consequently, we will address Reed's claim regarding Ind.Code § 35–50–1–2(c) only as the claim relates to his ineffective assistance of trial and appellate counsel arguments.

## II.

The next issue is whether Reed received the effective assistance of trial and appellate counsel. We apply the same standard of review to claims of ineffective assistance of appellate counsel as we apply to claims of ineffective assistance of trial counsel. *Williams v. State,* 724 N.E.2d 1070, 1078 (Ind.2000), *reh'g denied, cert. denied,* 531 U.S. 1128, 121 S.Ct. 886, 148 L.Ed.2d 793 (2001). To prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate both that his counsel's performance was deficient and that the petitioner was prejudiced by the deficient performance. *Ben–Yisrayl v. State,* 729 N.E.2d 102, 106 (Ind.2000) (citing *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984), *reh'g denied* ), *reh'g denied, cert. denied,* 534 U.S. 830, 122 S.Ct. 74, 151 L.Ed.2d 39 (2001). A counsel's performance is deficient if it falls below an objective standard of reasonableness based on prevailing professional norms. *French v. State,* 778 N.E.2d 816, 824 (Ind.2002). To meet the appropriate test for prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* Failure to satisfy either prong will cause the claim to fail. *Id.* Most ineffective assistance of counsel claims can be resolved by a prejudice inquiry alone. *Id.*

Reed argues that his trial counsel was ineffective for failing to object to the trial court's imposition of consecutive sentences based upon Ind.Code § 35–50–1–2(c). Similarly, Reed argues that his appellate counsel was ineffective for failing to raise the applicability of Ind.Code § 35–50–1–2(c) in Reed's direct appeal. As both claims relate to Ind.Code § 35–50–1–2(c), we will first address whether the statute was applicable.

As noted above, Ind.Code § 35–50–1–2(c) provides:

[E]xcept for crimes of violence, the total of the consecutive terms of imprisonment, exclusive of terms of imprisonment under IC 35–50–2–8 and IC 35–50–2–10, to which the defendant is sentenced for felony convictions arising out of an episode of criminal conduct shall not exceed the presumptive sentence for a felony which is one (1) class of felony higher than the most serious of the felonies for which the person has been convicted.

At the time of Reed's offense, attempted murder was not listed as a crime of violence. *See Fight,* 768 N.E.2d at 882. Thus, the question is whether his convictions arose out of an episode of criminal conduct.

■ The statute defines "episode of criminal conduct" as "offenses or a connected series of offenses that are closely related in time, place, and circumstance." I.C. § 35–50–1–2(b). Relying upon *Tedlock v. State*, 656 N.E.2d 273, 276 (Ind.Ct.App.1995), our supreme court has held that "where a complete account of a crime can be given without referring to the other offense, the offenses are not a single 'episode of criminal conduct.'" *Smith v. State*, 770 N.E.2d 290, 294 (Ind.2002).

According to Reed, the two attempted murder offenses are a single episode of criminal conduct because the acts were closely related in time, place, and circumstance. Reed argues that his flight from the police started the series of events, the series of events stopped when the police apprehended him, the pursuit only lasted ten minutes, a short amount of time elapsed between his two shooting incidents, and "[a]ll the charges are related and necessary to convey the complete story." Appellant's Brief at 8.

In support of his argument, Reed relies in part upon *Ballard v. State*, 715 N.E.2d 1276 (Ind.Ct.App.1999). There, the defendant went to Tammy Fields's apartment and, without permission, entered the apartment where he encountered Fields and Jamie Payne. *Id.* at 1277. The defendant struck both Fields and Payne. *Id.* The defendant was found guilty of burglary as a class B felony, battery against Fields as a class A misdemeanor, battery against Fields with a previous conviction of battery against her as a Class D felony, and battery against Payne as a class C felony. *Id.* at 1278. The trial court sentenced the defendant to consecutive sentences of three years for residential entry, three years for the class D felony battery, and eight years for the class C felony battery. *Id.*

On appeal, the defendant argued that the trial court erred by imposing consecutive sentences. *Id.* at 1280. We held that the defendant's "crimes were against the two people that were present in the apartment he broke into and the crimes all occurred within approximately half an hour at the same location." *Id.* "[T]he offenses committed relate closely enough in time, place, and circumstance, to warrant that a full description of either offense cannot be related without referring to the details of the other." *Id.* at 1281. "[A] complete account of the batteries cannot be related without mention of the residential entry." *Id.* Thus, we held that the defendant's offenses were an episode of criminal conduct, and therefore the sentences violated Ind.Code § 35–50–1–2(c). *Id.* We find Reed's reliance upon *Ballard* to be misplaced because unlike *Ballard*, where the defendant committed all the crimes in one location, here, Reed's crimes occurred at different locations and can be described without reference to one another.

Reed also relies upon *Johnican v. State*, 804 N.E.2d 211 (Ind.Ct.App.2004), in which the defendant ran from police officers, pointed a gun at an officer, and was arrested with cocaine on his person. *Id.* at 212–213. The defendant was found guilty of possession of cocaine, one count of pointing a loaded firearm at another person, and one count of resisting law enforcement, and the trial court sentenced him consecutively. *Id.* at 213. The defendant argued that his possession of cocaine offense represented one episode of criminal conduct, while his offenses of resisting law enforcement and pointing a firearm represented a separate episode of criminal conduct. *Id.* at 216. We held that where "a defendant possesses contraband on his person as he simultaneously commits other criminal offenses, the offenses should be deemed part of a single episode of criminal conduct."

*Id.* at 218. Thus, we concluded that the possession of cocaine offense was part of the same episode of criminal conduct as his resisting law enforcement and pointing a firearm offenses. *Id.* We find *Johnican* distinguishable from this case. In *Johnican*, the defendant's possession of cocaine was contemporaneous with his other offenses. Here, Reed's attempted murder of Officer Roach was not contemporaneous with his attempted murder of Officer Beachum.

Rather, we find *Smith*, 770 N.E.2d at 294, and *Monyhan v. State*, 780 N.E.2d 1187 (Ind.Ct.App.2003), more similar to Reed's offenses. In *Smith*, the defendant stole a checkbook on October 18, 1996, and proceeded to deposit six checks at six different banks in the Marion County area. *Id.* The six checks were deposited within the span of approximately two and one-half hours. *Id.* The defendant went from one bank branch to another branch, with about a half hour to an hour between visits, depositing checks for differing amounts of money. *Id.* Our supreme court concluded that "[l]ooking at the timing of the deposits, we find that they were not 'simultaneous' nor were they 'contemporaneous' with one another." *Id.* Further, the court held that it could "recount each of the forgeries without referring to the other forgeries." *Id.* "Each forgery occurred at a separate time, separate place and for a separate amount of money from the other." *Id.* Consequently, the court held that the defendant's conduct did not constitute a single episode of criminal conduct under Ind.Code § 35–50–1–2(c). *Id.*

Similarly, in *Monyhan*, 780 N.E.2d at 1188–1190, we concluded that the defendant's offenses did not constitute an episode of criminal conduct under Ind.Code § 35–50–1–2(c). There, the defendant was incarcerated in the Lawrence County Jail where he became involved in a fight with other inmates. *Id.* at 1188. Lawrence County dispatch called Officer Allender to return from the Lawrence County fairgrounds to assist correction officers. *Id.* Meanwhile, correction officers Brett Connerly and Jeremy Fender attempted to remove the defendant from the cellblock, but the defendant threw punches at them. *Id.* at 1188–1189. Connerly and Fender eventually handcuffed the defendant. *Id.* at 1189. On the way downstairs to the booking area, the defendant spat on Fender's shirt. *Id.* When the officers sat the defendant on a bench in the booking area, the defendant "reared back" and spat a "big glob of blood" in Connerly's right eye. *Id.* At this point, Officer Allender arrived and moved to restrain the defendant, but the defendant kicked Officer Allender's left hand, breaking his middle finger. *Id.* As a result, the State charged the defendant with three counts of battery as class D felonies and one count of attempted battery as a class A misdemeanor, and the trial court sentenced the defendant to three-year executed terms for each of the three counts of battery as class D felonies and one year for the attempted battery with each count to be served consecutively. *Id.*

On appeal, the defendant argued that the offenses were part of an episode of criminal conduct under Ind.Code § 35–50–1–2(c). *Id.* at 1190. We disagreed and held that all four counts were separate events that could be supported independently because they occurred at different times and places. *Id.*

> The first in time was the attempted battery for throwing punches at Connerly and Fender as they tried to break up the fight upstairs in the cellblock. Secondly, [the defendant] was charged with battery for spitting on Fender's shirt while being moved downstairs. Thirdly, [the defendant] was charged with bat-

tery for spitting blood in Connerly's eye, and finally, [the defendant] was charged with battery for kicking Officer Allender in his left hand. Each incident occurred at a different place and time. In fact, enough time had passed to allow for Officer Allender to travel from the Lawrence County fairgrounds to the jail. *Id.* Thus, we concluded that the defendant's sentence was not subject to the consecutive sentence limitations of Ind. Code § 35–50–1–2(c) "because the record shows that an accounting of each charge can be made without referring to the details of the other." *Id.*

Here, while Officers Neitzel, Roach, and Beachum were investigating a disturbance, Reed approached the scene in his car. Reed drove between Officer Neitzel and Officer Roach's parked police cars, and Reed's car became wedged between the police cars. When another officer arrived to investigate the accident, Officer Neitzel moved her car and Reed backed his car up. However, Reed suddenly drove forward again and sped away from the scene. Officers Neitzel, Roach, and Beachum pursued Reed. A couple of minutes later, Reed stopped his car, opened his driver's side door, and fired one shot in the direction of Officers Roach and Beachum. Reed drove another block, slowed his car to almost a stop, and fired two shots at Officer Beachum. The chase continued for approximately eight more minutes until the officers stopped Reed's car with stop sticks. The entire chase lasted for approximately ten minutes. The State charged Reed with one count of attempted murder for shooting at Officer Roach, one count of attempted murder for shooting at Officer Beachum, and one count of carrying a handgun without a license.

The post-conviction court found that "each of [Reed's] convictions stemmed from separate episodes of criminal conduct." Appellant's Appendix at 74. We agree. Reed's attempted murder of Officer Roach occurred at a different location and time than his attempted murder of Officer Beachum. While the offenses were admittedly close in location and time, we can recount the facts related to the shooting at Officer Roach without referring to the facts related to the shooting at Officer Beachum. Thus, we cannot say that the post-conviction court's finding that the offenses were not an episode of criminal conduct under Ind.Code § 35–50–1–2(c) is erroneous. *See, e.g., Monyhan,* 780 N.E.2d at 1190.

Although Reed argues that his trial counsel and appellate counsel were ineffective for failing to raise the limitation of consecutive sentences found in Ind.Code § 35–50–1–2(c), we agree with the post-conviction court that Reed's sentencing did not violate the statute. Therefore, his argument that his trial and appellate counsel were ineffective fails because he cannot demonstrate a reasonable probability that but for this alleged failure, the result of his sentencing would have been different. *See, e.g., Hollins v. State,* 790 N.E.2d 100, 109 (Ind.Ct.App.2003) (holding that the petitioner's claims of ineffective assistance of trial and appellate counsel failed because the petitioner's sentence did not violate Ind.Code § 35–50–1–2), *trans. denied.* Consequently, the post-conviction court did not err by denying Reed's claims of ineffective assistance of trial and appellate counsel.

For the foregoing reasons, we affirm the post-conviction court's denial of Reed's petition for post-conviction relief.

Affirmed.

BAKER and FRIEDLANDER, JJ., concur.