OPINION
{¶ 1} This case is before us on the appeal of Byron Blackwell from his conviction on charges of improperly discharging a firearm at or into a habitation. Following his conviction, Blackwell was sentenced to six years in prison, plus three years actual incarceration for a firearm specification, to be served consecutively, for a total of nine years. In support of the appeal, Blackwell raises the following assignments of error:
 {¶ 2} "I. The trial court erred when it overruled Blackwell's Criminal Rule 29 motion for acquittal because the evidence presented by the State was insufficient to support his conviction for improper discharge of a firearm.
 {¶ 3} "II. Was the Appellant's right to effective assistance as guaranteed by the Sixth Amendment to the U.S. Constitution violated by his trial counsel's representation?"
 {¶ 4} After reviewing the record, we find the assignments of error without merit. Accordingly, the judgment of the trial court will be affirmed.
 I {¶ 5} The charge against Blackwell arose from events that occurred in the early morning hours of January 30, 2004. On that date, a ninety year old woman, Louise Stewart, was awakened by the sound of bullets hitting the outside wall of her bedroom. When Stewart looked out her bedroom window to see if someone was there, a bullet came in through the window, breaking the pane, blind, and curtain. The bullet then went into a chest of drawers that sat at the foot of Stewart's bed.
 {¶ 6} Officers Fuller and Reynolds were dispatched to Stewart's house around 4:15 a.m., and arrived about five minutes later. Snow had just fallen, and there were three to four inches of fresh, pure snow on the ground. When Fuller approached the house, he immediately saw a bullet hole through the front window on the left side of the house. Subsequently, an evidence technician, Anthony Sawmiller, arrived to collect physical evidence. Upon tracing the probable backward trajectory of the bullet, Sawmiller discovered footprints in the driveway area of a neighboring house. Fresh footprints led directly up to the house, stopped, and then led away from the house. The footprints leading away were farther apart, suggesting that the individual was running away. What was important about these footprints was that it had just snowed and these were the only footprints in the area. Sawmiller also found a shell casing by the footprints.
 {¶ 7} Sawmiller followed the footprints, and eventually discovered that they led to the front door of 2527 Greenbriar Drive, which was a few blocks from the location of the shooting. On a few occasions, Sawmiller lost the footprints because the suspect had crossed a street where traffic had passed. However, Sawmiller was able to pick the footprints up again on the other side of the street. The center part of the shoe right below the arch design with the name of the shoe (Reebok) left an impression in the snow and Sawmiller was easily able to follow the footprints.
 {¶ 8} When Sawmiller arrived at the Greenbriar address, he notified Fuller and Reynolds to come to the house. Before Fuller left, he asked Stewart's grandson if anyone at 2527 Greenbriar Drive might have a reason to harm Stewart's family. The grandson mentioned the name,"Byron", as a possibility.
 {¶ 9} When Fuller and Reynolds arrived at 2527 Greenbriar, they asked an older gentleman, Marcus Blackwell, if anyone named Byron lived there. Blackwell indicated that someone by that name did live there, and allowed the officers to accompany him into the basement. There, the officers found Byron Blackwell, apparently asleep in bed. The officers entered the room and took a position on either side of the bed, while Marcus attempted to wake Byron up. When Byron woke up, Fuller asked if he had any weapons, and Byron said that he did not. The officers then searched the "lunge area" quickly, for weapons. At that time, Fuller saw bullets in an open top pocket of a backpack about three to four feet from the bed. Fuller then opened the backpack and found a gun inside. Reynolds also saw a shoe, sitting on its side on the floor, and recognized the print as the same one that he had seen in the snow. As a result, the officers handcuffed Blackwell. Blackwell was then indicted for discharging a firearm into a habitation.
 {¶ 10} Before trial, Blackwell filed a motion to suppress, contending that the officers lacked probable cause for the warrantless search of his bedroom. The trial court granted the motion as to the gun and bullets, but rejected it as to the shoe. After the State appealed the decision as to the gun and bullets, we reversed, finding that the officers were entitled to search the area around Blackwell for weapons. State v. Blackwell, 159 Ohio App.3d 790, 2005-Ohio-922, 825 N.E.2d 922.
 {¶ 11} On remand, the State presented evidence at trial from Stewart and from Officers Fuller and Sawmiller. The State also called Chris Monturo to testify. Monturo was employed by the Miami Valley Regional Crime Laboratory as a firearm and tool mark examiner. Monturo had tested the firearm and bullets found in Blackwell's room against the shell casing and bullet found at the crime scene, and concluded that Blackwell's gun was the weapon used in the crime. After the State rested, Blackwell moved for a Crim. R. 29 acquittal, but the court rejected the motion. Blackwell was then found guilty of the crime.
 {¶ 12} Blackwell claims that the trial court erred in overruling the motion for acquittal, because insufficient evidence of guilt was presented at trial. In particular, Blackwell points to evidence indicating: (1) that he was asleep in his bedroom the entire night; (2) that Stewart could not identify who shot at her house; (3) that the shoes recovered by the police were dry and were not covered with snow; (4) that the brand of shoe was popular, worn by many people; (5) that Blackwell's fingerprints were not found on the gun or bullets; and (6) that the police failed to swab Blackwell's hands to see if he had recently discharged a firearm.
 {¶ 13} In State v. Mills, Montgomery App. No. 21233,2006-Ohio-4010, we recently observed that:
 {¶ 14} "[a]n appeal challenging the sufficiency of the evidence tests whether the evidence introduced at trial is legally sufficient to support a verdict as a matter of law.State v. Thompkins (1997), 78 Ohio St.3d 380, 386, superceded by constitutional amendment on other grounds as stated in Statev. Smith (1997), 80 Ohio St.3d 89. When reviewing the sufficiency of the evidence, an appellate court examines the evidence admitted to determine whether, if believed, it would convince the average mind of the defendant's guilt beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus, superceded by constitutional amendment on other grounds as stated in Smith. The relevant inquiry is, whether after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." 2006-Ohio-4010, at ¶ 8.
 {¶ 15} After reviewing the record, we find that any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. In fact, the evidence was overwhelming.
 {¶ 16} Blackwell was charged with violating R.C.2923.161(A)(1), which states that:
 {¶ 17} "No person, without privilege to do so, shall knowingly do any of the following:
 {¶ 18} "(1) Discharge a firearm at or into an occupied structure that is a permanent or temporary habitation of any individual * * *."
 {¶ 19} All these elements were satisfied by proof at trial, which connected the footprints to Blackwell, and his gun and ammunition to the bullet and shell casing found at the scene.
 {¶ 20} Contrary to Blackwell's claims, there was no evidence that he had been asleep all night. In fact, when the police arrived around 6:00 a.m., Marcus Blackwell said that he did not know if Byron was at home. It is true that Blackwell appeared to be asleep when the officers went into his bedroom. However, that does not mean that Blackwell had been home the entire night, nor does it mean that he was not at the crime scene a few hours earlier.
 {¶ 21} The elements of the crime also do not require that a victim identify the individual who shot at her home. Circumstantial evidence may point to the perpetrator, as it did here, where the police were able to follow footprints leading from the crime scene to where the perpetrator was found. Furthermore, the fact that other people might wear similar shoes is irrelevant, where the footprints led to the defendant's home. This crime occurred in the early morning hours on a winter night, after a fresh cover of snow, and there were very few other footprints around. No matter how many people might possibly wear a certain type of shoe, it is highly unlikely that they would be outside at 4:00 a.m. on a snowy winter night, coincidentally walking between the crime scene and the defendant's house.
 {¶ 22} We also attach no significance to the fact that the shoes were dry when the officers came to Blackwell's house. No evidence was presented to contradict Officer Sawmiller's testimony that the shoes were leather and could have dried during the time that had elapsed since the shooting — a period of almost two hours.
 {¶ 23} Similarly the lack of fingerprint evidence does not undermine the State's case. The gun was found in Blackwell's possession and was directly connected to the crime scene by the marks on the bullet and casing, which (according to the testimony), are as unique as fingerprints. In addition, while Blackwell is technically correct about his fingerprints not being found on the gun or magazine, the reason for this is that the police did not examine these items for fingerprints. The gun was not tested because the grip and slide were textured, rather than smooth, and would not produce adequate prints for comparison. Although the magazine did have a smooth surface, it also was not tested — probably because it was found in Blackwell's possession. If the gun and magazine had been found elsewhere in the house or off the premises, fingerprint evidence might have been helpful in connecting Blackwell to the crime. However, in view of the facts of this case, fingerprint evidence was unnecessary.
 {¶ 24} Finally, the State's failure to "swab" Blackwell's hands for gunpowder residue was readily explained. Officer Sawmiller testified that the Dayton Police Department no longer uses atomic absorption tests to tell if someone has fired a handgun because the test yields too many false positives.
 {¶ 25} Based on the circumstantial evidence that was submitted and was not controverted in any way, any rational trier of fact could have found the elements of R.C. 2923.161(A)(1) established beyond a reasonable doubt. Accordingly, the first assignment of error is without merit and is overruled.
 II {¶ 26} The second assignment of error is based on a claim of ineffective assistance of trial counsel. In this regard, Blackwell's appellate counsel notes that Blackwell requested assertion of an ineffective assistance of counsel claim. However, appellate counsel states that her review of the case indicates that this issue does not have merit.
 {¶ 27} We have previously rejected attempts to make this type of argument. In State v. Connors-Camp, Montgomery App. No. 20850, 2006-Ohio-409, we stressed that:
 {¶ 28} "`[i]f appellate counsel determines there are any issues warranting appellate review, even if there is only one, discussion of non-meritorious issues is neither appropriate nor desirable. Were it otherwise, this court would be required to provide appellants with an opportunity to present their own pro se briefs addressing issues already determined by their appellate counsels to be devoid of merit. While this is a proper procedure in situations where counsel has decided that any appeal would be frivolous, it is not where the appellant's attorney has found an issue or issues worthy of review.' Id.
 {¶ 29} "For the same reasons, we decline to review the claim of ineffective assistance of trial counsel raised by Connors-Camp's counsel, with a disclaimer, pursuant to Anders v.California (1967), 386 U.S. 738, that this claim has no arguable merit. An Anders brief is only appropriate where appellate counsel deems the appeal to be wholly frivolous." 2006-Ohio-409, at ¶ 56-57, quoting from State v. Padgett (June 30, 2000), Greene App. No. 99 CA 87, 2000 WL 873218. Because the same logic applies to the present case, we decline to consider the claim of ineffective assistance of trial counsel. The second assignment of error, therefore, is overruled.
 {¶ 30} Based on the preceding discussion, the first and second assignments of error are overruled, and the judgment of the trial court is affirmed.
Grady, P.J., and Fain, J., concur.