In the

# United States Court of Appeals
## For the Seventh Circuit

No. 07-2486

HOWARD A. ALLEN, JR.,

*Petitioner-Appellant*,

*v.*

EDWIN G. BUSS, SUPERINTENDENT,

*Respondent-Appellee*.

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. 01 C 1658—**John Daniel Tinder**, *Judge.*

ARGUED JULY 25, 2008—DECIDED MARCH 11, 2009

Before FLAUM, ROVNER, and WILLIAMS, *Circuit Judges.*

WILLIAMS, *Circuit Judge.* In 1988, consistent with a jury's verdict and sentencing recommendation, the Marion Superior Court in Indiana sentenced Howard A. Allen, Jr. to death by lethal injection for the murder and robbery of Ernestine Griffin. Since then, Allen has been asking the Indiana state courts to consider his claim that he is mentally retarded and therefore should not be executed. First, he sought relief when Indiana banned the execution

of mentally retarded persons in 1994, but the Indiana courts held that the new statute did not apply retroactively to Allen. Instead, the state trial court, without holding a hearing, considered his mental retardation as a mitigating factor and found it did not outweigh the aggravating circumstance of his crime. In 2002, after the Supreme Court issued its opinion in *Atkins v. Virginia*, 536 U.S. 304 (2002), which categorically banned the execution of the mentally retarded, Allen again sought relief from his execution. But the Indiana Supreme Court determined that because Allen had already litigated his claim that he was mentally retarded as a mitigating circumstance, he would not be allowed to relitigate his *Atkins* claim. We think this decision is contrary to the Supreme Court's holding in *Atkins*, which recognized that there is a difference between using mental retardation as a mitigating factor and categorically excluding mentally retarded persons from the death penalty altogether. Because Allen has presented evidence that he is mentally retarded, we vacate the district court's denial of Allen's habeas petition and remand the case to the district court for an evidentiary hearing to address whether Allen is mentally retarded under Indiana law.

In light of our standard of review on habeas claims, we reject Allen's remaining two arguments. Allen maintains, pursuant to the Supreme Court's opinion in *Eddings v. Oklahoma*, 455 U.S. 104 (1982), that he should have received a new penalty phase hearing before a jury and that the sentencing court ignored some of his mitigating evidence. Because Allen did not raise the first argument in the Indiana courts, we find that he procedurally de-

faulted this claim, which precludes us from reaching its merits. As to his claim regarding mitigating evidence, the sentencing court's order does not make clear that it ignored Allen's evidence rather than choosing to give it little weight so we are constrained by the Indiana Supreme Court's finding that the trial court considered the evidence, which is not objectively unreasonable. Allen also claims that his statements were taken in violation of *Miranda v. Arizona*, 384 U.S. 436 (1966), and were improperly admitted at trial. However, he fails to establish that the state court's adjudication of his *Miranda* claims resulted in a decision that was contrary to, or an unreasonable application of, Supreme Court precedent, or based on an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d)(1) & (2). For these reasons, we affirm the judgment of the district court on Allen's *Eddings* and *Miranda* claims.

## I. BACKGROUND

Because Allen has raised three distinct issues, we set forth here a brief summary of the facts and discuss in greater detail the facts applicable to each issue below. In 1988, a jury convicted Allen of the murder, felony murder, and robbery of Ernestine Griffin. The State of Indiana sought the death penalty based on the circumstances of the crime (intentional killing during a robbery). The trial court followed the jury's recommendation and sentenced Allen to death.

Allen appealed, but before the Indiana Supreme Court considered his appeal, it remanded the case to the trial

court and directed it to issue a written sentencing order. In the same order, it stated that the trial court should consider Allen's evidence of mental retardation as a mitigating factor. In 1996, the trial court, without holding a hearing, considered Allen's evidence and concluded in a written sentencing order that "the possibility of the mitigating circumstance of [Allen's] mental retardation" did not outweigh the aggravating circumstance of his crime. In that order, the court also considered and ruled out other mitigating circumstances, such as Allen's age and criminal history.

The Indiana Supreme Court then ordered supplemental briefing and considered Allen's appeal in full. It affirmed Allen's conviction and sentence. *Allen v. State*, 686 N.E.2d 760 (Ind. 1997) ("*Allen I*"). The Indiana Supreme Court considered no less than seventeen issues but the following holdings are the only relevant ones: (1) Allen's statements to the police at the time of his interrogation were made voluntarily; (2) Allen was not entitled to the benefit of Indiana's amended law prohibiting the execution of the mentally retarded; and (3) the trial court's sentencing order properly considered and weighed the evidence in favor of and against imposing the death penalty and reflected no constitutional or statutory error. Allen then sought post-conviction relief on a number of issues not relevant to this appeal. The Indiana Supreme Court denied his claims. *Allen v. State*, 749 N.E.2d 1158 (Ind. 2001) ("*Allen II*").

In March 2002, Allen filed a petition for habeas relief in federal district court. While that petition was pending,

the United States Supreme Court issued its opinion in *Atkins v. Virginia*, 536 U.S. 304 (2002), which held that "death is not a suitable punishment for a mentally retarded criminal," and categorically banned the execution of mentally retarded persons. 536 U.S. at 321.

Allen then moved the Indiana Supreme Court for permission to file a successive petition for post-conviction relief. In that motion, Allen claimed that his execution was prohibited by *Atkins*. The court held that because Allen had already litigated that claim, he would not be allowed to relitigate it. *Allen v. State*, No. 49S00-0303-SD-122, 2003 Ind. LEXIS 581 (Ind. July 15, 2003) (unpublished order) ("*Allen III*"). Justice Boehm dissented, contending that the issue was, in fact, not litigated and that Allen should be permitted to litigate it.

On September 19, 2006, the district court denied Allen's habeas petition without a hearing and entered judgment against him. The district court concluded that Supreme Court case law did not entitle Allen to habeas relief. It also denied Allen's motion to alter or amend judgment on May 30, 2007.

## II. ANALYSIS

### A. Standard of Review

We review de novo the district court's denial of a habeas petition. *Arredondo v. Huibregtse*, 542 F.3d 1155, 1167 (7th Cir. 2008). Pursuant to the Antiterrorism and Effective Death Penalty Act (AEDPA), we may grant habeas relief only if: (1) the state court's decision was "contrary to, or

involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court," 28 U.S.C. § 2254(d)(1), or (2) "the decision . . . was based on an unreasonable determination of the facts in light of the evidence presented in the state proceeding." 28 U.S.C. § 2254(d)(2).

A decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). A decision represents an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* Factual issues determined by state courts are presumed to be correct, and the petitioner bears the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

### B.  Allen is entitled to an *Atkins* hearing.

Allen claims that his execution would violate the Eighth Amendment because he is mentally retarded. In *Atkins v. Virginia*, the Supreme Court construed the Eighth Amendment to prohibit the execution of mentally retarded persons, reasoning that such punishment would be "excessive." 536 U.S. at 321. The Court did not provide a definition for "mental retardation," entrusting the

states with the "task of developing appropriate ways to enforce the constitutional restriction" upon the execution of their sentences. *Id.* at 317 (quoting *Ford v. Wainwright*, 477 U.S. 399, 416-17 (1986)). *Atkins* is retroactive on collateral review. *Penry v. Lynaugh*, 492 U.S. 302, 330 (1989) (a holding that "the Eighth Amendment prohibits the execution of mentally retarded persons such as Penry . . . would fall under the first exception to the general rule of nonretroactivity and would be applicable to defendants on collateral review"); *see also Davis v. Norris*, 423 F.3d 868, 879 (8th Cir. 2005) (*Atkins* retroactive pursuant to *Penry*); *In re Holladay*, 331 F.3d 1169, 1173 (11th Cir. 2003).

Indiana defines a mentally retarded individual as someone who, "before becoming twenty-two (22) years of age, manifests: (1) significantly subaverage intellectual functioning; and (2) substantial impairment of adaptive behavior. . . ." Ind. Code § 35-36-9-2. Indiana enacted this statute in 1994, prior to the Supreme Court's decision in *Atkins*, but by that time Allen had already been convicted and sentenced to death. That same year, Indiana also banned the execution of the mentally retarded. Prior to 1994, Indiana courts could consider mental retardation as a mitigating factor when deciding whether to impose the death penalty.

Allen sought appellate relief from his death sentence under the Indiana statute, claiming that he was mentally retarded, and submitted affidavits in support of his claim. In 1996, the Indiana Supreme Court remanded the case to the trial court and directed it to consider Allen's affidavits as *mitigating evidence*. Critically, the Indiana

Supreme Court did not vacate the death sentence, nor did it instruct the trial court to consider evidence of mental retardation as a potential bar to Allen's execution. *See Allen I*, 686 N.E.2d at 788.

Allen submitted the following evidence to support his claim that he is mentally retarded.[1] IQ tests administered when Allen was seven years old revealed he had an IQ of 70. He was placed in special education classes for mentally retarded children when he was eight years old. At the age of ten, he was retested and received a score of 68, so he remained in special education classes. Mary Jo Dare Avers and Dr. Richard Dever provided affidavits on behalf of Allen. Dr. Dever concluded, based on tests administered to Allen when he was a child and his IQ scores, that Allen was mentally retarded. Avers, the Director of Special Education for the Indianapolis Public School Corporation, opined that Allen had difficulty processing language as a child and could have difficulty understanding the consequences of his conduct and be easily led. Dr. Dever opined that Allen manifested deficits in adaptive behavior during the developmental period in his life. There was no expert who contradicted these conclusions.

Without holding a hearing, the trial court issued an order stating that it had examined the "mitigating cir-cumstances" and concluded that death was appropriate

---

[1] We note that this is not an exhaustive summary of the evidence presented by Allen. We set forth only some of the relevant evidence for purposes of the discussion.

based on the jury's recommendation. In so doing, the trial court explained that the "information contained in the affidavits . . . tend [sic] to show a mitigating factor, but is a very slight mitigating factor." It discussed other evidence in the record, such as the reports of two court-appointed psychiatrists in 1975 who reported that he was "well oriented and had the capacity to understand his behavior," the fact that no witness called by Allen at his sentencing mentioned mental retardation, and the court's own observations of Allen during the trial and sentencing hearing. It also noted that the pre-sentence report stated that Allen "had an IQ of 104." The court then concluded that "the aggravating circumstance out-weighs the possibility of the mitigating circumstance of mental retardation" and agreed with the jury that death was the appropriate sentence. The Indiana Supreme Court affirmed Allen's conviction and sentence. Al-though Allen attempted to seek relief under Indiana's new statute prohibiting the execution of the mentally retarded, the court held that the statute did not apply retroactively to Allen. *Allen I*, 686 N.E.2d at 786.

After the Supreme Court issued its opinion in *Atkins*, Allen moved the Indiana Supreme Court for permission to file a successive petition for post-conviction relief, claiming that his execution is prohibited by *Atkins*. The Indiana Supreme Court denied the motion. It explained that because the Indiana courts had already considered evidence of Allen's mental retardation as a mitigating factor, Allen could not relitigate his *Atkins* claim. *Allen III*, 2003 Ind. LEXIS 581, at *14.

The court acknowledged that the issue of Allen's mental capacity was presented to the trial court in the context of whether Allen's mental retardation was a mitigating circumstance sufficient to outweigh the aggravating circumstance. But it reasoned that the factual inquiry required by this balancing test is the same as the one required by *Atkins*: "is the person mentally retarded?" *Id.* at \*12. After reviewing the paper evidence submitted by Allen in 1996 and the trial court's decision to give it little weight as a mitigating factor in light of other evidence, the Indiana Supreme Court concluded that Allen "had a full and fair opportunity to litigate the issue of whether he is mentally retarded." *Id.* at \*14.

This decision is contrary to the Supreme Court's holding in *Atkins*, which recognized that there is a difference between using mental retardation as a mitigating factor and categorically excluding mentally retarded persons from the death penalty altogether. 536 U.S. at 320-21. One is a balancing test and the other is a ban. According to the Supreme Court, the difference between these inquiries matters. The Supreme Court held that reliance on mental retardation as a mitigating factor was insufficient to protect mentally retarded defendants because they are less able to give meaningful assistance to their counsel, and their demeanor may create an unwarranted impression of lack of remorse. *Id.* (noting the "lesser ability of mentally retarded defendants to make a persuasive showing of mitigation in the face of prosecutorial evidence of one or more aggravating factors"). Because "[m]entally retarded defendants . . . face a special risk of wrongful execution," the Supreme Court found it neces-

sary to "categorically" exclude mentally retarded persons from the death penalty. *Id.* at 320-21. Indeed, the state court in *Atkins* considered evidence of the defendant's mental retardation as a mitigating factor, but the Supreme Court held that was not sufficient under the Constitution. And it bears noting that the state court on remand held a hearing regarding Atkins's mental retardation even though a jury already heard evidence regarding his mental retardation during the penalty phase of his trial.

Here, Allen's claim regarding mental retardation received consideration only as a mitigating factor. We simply cannot reconcile the Indiana Supreme Court's determination—that Allen had already litigated his *Atkins* claim because he was able to present it as mitigating evidence—with the Supreme Court's decision that the consideration of mental retardation as a mitigating factor does not sufficiently protect the rights of mentally retarded persons. *See, e.g.*, *Hall v. Quarterman*, 534 F.3d 365, 371-72 (5th Cir. 2008) (remanding defendant's claim to district court to conduct an evidentiary hearing where state only considered defendant's mental retardation evidence on paper); *Hill v. Anderson*, 300 F.3d 679, 682 (6th Cir. 2002) (remanding defendant's claim to state courts to consider *Atkins* issue even though jury considered evidence of mental retardation as mitigating factor in sentencing).

The State maintains that the Indiana courts found Allen to be not mentally retarded and argues that such findings are presumed correct on habeas review. How-

ever, the state courts in this case never considered whether Allen is mentally retarded under the Indiana standard for mental retardation. *Cf. Murphy v. Ohio*, 551 F.3d. 485, 506 (6th Cir. 2009) (state court's finding that petitioner was not mentally retarded was a "reasonable application of and in accordance with Supreme Court precedent" when state court held an evidentiary hearing and utilized appropriate standard). Instead, the Indiana Supreme Court relied on the trial court's pre-*Atkins* determination that Allen's mental retardation was not sufficiently mitigating to overcome an aggravating circumstance. That determination was a balancing test, not a binary inquiry.

And the trial court's analysis makes clear that it engaged in a substantively different inquiry from that mandated by *Atkins*. First, the trial court did not determine whether Allen is mentally retarded under Indiana's test for mental retardation. That test would have required consideration of whether Allen "manifest[ed] . . . significantly subaverage intellectual functioning" and "substantial impairment of adaptive behavior" before becoming twenty-two years of age. Ind. Code § 35-36-9-2. The trial court's sentencing order does not even mention, much less discuss, this test or how it applies to Allen. Second, the trial court's sentencing order does not conclude that Allen is not mentally retarded. The sentencing order states that the information contained in Allen's affidavits "*tend* [sic] *to show a mitigating factor*, but is a very slight mitigating factor." Later, it states that the "aggravating circumstance outweighs the *possibility of the mitigating circumstance of mental retardation*." (Emphases

added.) As Justice Boehm aptly notes in his dissent to the Indiana Supreme Court's ruling in *Allen III*, it is not clear whether the trial court meant that Allen is only mildly (or slightly) mentally retarded, or whether it meant that, though Allen might be mentally retarded, that fact does not mitigate against putting him to death (or both). 2003 Ind. LEXIS 581, at *16-17. None of these readings amounts to a conclusion that Allen was not, in fact, mentally retarded. In light of these statements and the entirely different standard utilized by the trial court in reaching its conclusion, the Indiana Supreme Court's determination that the trial court found Allen to be not mentally retarded for the purposes of *Atkins* is objectively unreasonable.

The State also argues that Allen is not entitled to an evidentiary hearing on whether he is mentally retarded. "Where the facts are in dispute, the federal court in habeas corpus must hold an evidentiary hearing if the habeas applicant did not receive a full and fair evidentiary hearing in a state court." *Townsend v. Sain*, 372 U.S. 293, 312 (1963), *overruled on other grounds*, *Keeney v. Tamayo-Reyes*, 504 U.S. 1, 5-6 (1992). We have explained that a hearing is required if: "(1) the petitioner alleges facts which, if proved, would entitle him to relief and (2) the state courts, for reasons beyond the control of the petitioner, never considered the claim in a full and fair hearing." *Davis v. Lambert*, 388 F.3d 1052, 1061 (7th Cir. 2004).

As discussed above, Allen has put forth evidence that he is mentally retarded as Indiana defines that condition,

and a determination that he is mentally retarded would entitle him to relief. The State disputes that Allen is mentally retarded, relying on evidence that remains free from cross-examination.[2] Because the Indiana state courts never considered Allen's evidence using the proper *Atkins* inquiry (which would have required them to apply the appropriate standard for mental retardation), it is objectively unreasonable to conclude that Allen

---

[2] We disagree with the State that Allen's claim that he is mentally retarded can be rejected on the basis of the record compiled in the state courts. There are disputes that cannot be resolved without a hearing. We name only a few examples here. The Indiana courts relied heavily on a "test used by the Department of Corrections for assessing prisoners" that showed Allen had an IQ of 104. That test, unlike the tests administered when Allen was a child, was administered when Allen was more than 22 years old. The record reveals that the score did not result from a standard Wechsler Adult Intelligence Scales test (what the Supreme Court acknowledged to be the "the standard instrument in the United States for assessing intellectual functioning," *Atkins*, 536 U.S. at 309 n.5) or a comparable test, but rather a "Beta" test. The record does not make clear what a "Beta" test is, or even if it is reliable. More importantly, the record does not indicate that a score of 104 on a Beta test is comparable to a score of 104 on a standard Wechsler test or a Stanford Binet Intelligence Scale. The Indiana Supreme Court also noted Allen's mother's testimony that he was an "average student." But the record reveals that Allen was always in special education classes for *mentally retarded children*. That he was an average student in special education classes does not show that he was not mentally retarded.

had a "full and fair" hearing on his *Atkins* claim.[3] *See, e.g.,* *Walker v. True*, 399 F.3d 315, 327 (4th Cir. 2005) (district court's refusal to hold evidentiary hearing was error where petitioner alleged facts that would entitle him to relief under *Atkins*).

The State responds that 28 U.S.C. § 2254(e)(2) blocks Allen from receiving a hearing. But by its own terms, that statute "applies only to prisoners who have 'failed to develop the factual basis of a claim in State court proceedings.'" *Williams v. Taylor*, 529 U.S. 420, 430 (2000) (quoting § 2254(e)(2)). Allen did not fail to develop the factual basis of this claim. Indeed (and somewhat confusingly), the State contends that "Allen has fully developed the factual basis for his claim." Appellee Br. 24. To the extent that what the State means to argue is that Allen had a full and fair opportunity to litigate this claim, we have already rejected this argument.

One point of clarification remains. At oral argument, the State argued that if we remanded Allen's case for an *Atkins* hearing, the district court would need to determine whether Allen satisfies the "clinical definition" of mental retardation (using Indiana's standard) and *also* "whether or not Allen is among the class of offenders of which there is a total national consensus." This national consensus, according to the State, requires the district court to find that Allen has an IQ of 60 or below.

---

[3] For this reason, Allen's argument in a post-conviction proceeding (pre-dating *Atkins*) that he was misdiagnosed as mentally retarded has no bearing on his *Atkins* claim.

We reject this argument. Contrary to the State's assertion, the Supreme Court in *Atkins* did *not* establish a national standard for mental retardation but expressly left to the states the task of defining mental retardation. 536 U.S. at 317. And to the extent that the Court acknowledged any limiting IQ score, that score was well above 60. *See id.* at 309 n.5 (noting that an IQ score "between 70 and 75 or lower . . . is typically considered the cutoff IQ score for the intellectual functioning prong of the mental retardation definition.").

A straightforward application of *Atkins* to the facts of this case entitles Allen to a hearing regarding whether he is mentally retarded and therefore categorically excluded from the death penalty. We remand this case to the district court. On remand, the district court should give Allen the chance to develop the factual basis of his claim and present it at an evidentiary hearing. The court must then determine, using Indiana's standard for mental retardation, whether Allen is entitled to relief under *Atkins*.

## C.  *Eddings* claim

Next Allen claims that his sentence was imposed in a manner that violates the rule announced by the Supreme Court in *Eddings v. Oklahoma*, 455 U.S. 104 (1982). Specifically, Allen argues that he should have received a new penalty phase hearing before a jury (rather than the trial court), and that the trial court failed to consider his mitigating evidence. After setting out the relevant facts, we address each argument in turn.

The Indiana trial court sentenced Allen to death based on the recommendation of the jury that convicted him. The Indiana Supreme Court provided a limited remand because the trial court had imposed its sentence orally and, at the time of Allen's appeal, Indiana law required a written sentencing order. It ordered the trial court to issue a written sentencing order and directed it to "balance the aggravating circumstances . . . against the evidence of mitigating circumstances (including both statutory and non-statutory circumstances)." *See Allen I*, 686 N.E.2d at 788 n.32. As discussed above, it also ordered the court to consider Allen's newly presented evidence of mental retardation as a mitigating factor.

The trial court issued a written order concluding that the aggravating circumstance outweighed any mitigating circumstances and sentenced Allen to be executed. Despite the fact that Allen presented evidence of his traumatic and dysfunctional childhood to the trial court on remand,[4] the trial court's sentencing order makes no specific mention of it. The sentencing order reviews a

---

[4] The record indicates that Allen's father abandoned Allen and the rest of the family both physically and financially when Allen was very young. Allen's mother suffered from alcoholism and left Allen with his younger siblings for days at a time when she went on drinking binges. This abandonment forced Allen to provide food for his younger siblings when Allen was too young to get a job. Allen resorted to stealing to get food and was incarcerated as a juvenile in the 1960s. During the incarcerations, he endured severe corporal punishment before a court stepped in to end the traumatic beatings.

number of circumstances, such as Allen's age and his mental retardation, and then states that it "finds no other circumstances appropriate for consideration as a mitigating factor."

When Allen appealed the trial court's sentence in *Allen I*, he argued (among other things) that the trial court "ignored" mitigating circumstances other than whether or not he was mentally retarded. These mitigating circumstances included his dysfunctional childhood and his mental frailty as a child. Allen's Supp. Br. 11-14. The Indiana Supreme Court rejected his argument, finding that the trial court had properly considered his mitigating evidence and weighed it against the aggravating circumstance. It stated further that "[a]ccepting the facts alleged about Allen's childhood does not compel a finding of mitigating circumstances." *Allen I*, 686 N.E.2d at 790.

We first consider what claims are properly before us. Federal habeas relief is not available if the petitioner has not exhausted his state court remedies. *See* 28 U.S.C. § 2254(b)(1)(A). This means Allen first must have "fairly presented the issues" to the Indiana Supreme Court. *Simpson v. Battaglia,* 458 F.3d 585, 595 (7th Cir. 2006). Allen argues that the Indiana Supreme Court erred in 1996 when it remanded his case to the trial court to consider mitigating evidence rather than ordering a new penalty phase before a jury. According to Allen, a jury should have heard all of the mitigating evidence anew. This argument should have been raised on Allen's appeal after the trial court issued its sentencing order. Contrary to Allen's strenuous assertions, our review of the record

reveals he never raised this argument in the Indiana state courts.[5] Our conclusion is buttressed by the fact that the Indiana Supreme Court did not address the issue on appeal.[6] *See Allen I*, 686 N.E.2d at 788 (reciting arguments raised by Allen on appeal); *Allen II*, 749 N.E.2d at 1177. Therefore it is not properly before us. *See* 28 U.S.C. § 2254(b)(1)(A).

We turn to Allen's argument regarding the substance of the trial court's mitigation analysis. Allen argues that the trial court failed to consider and give effect to mitigating evidence such as his traumatic childhood and his ability to adjust in an institutional setting. Although Allen raised the argument as to the first of these two mitigating factors in the Indiana courts, we find no mention of his ability to adjust in an institutional setting. Therefore, we consider only Allen's claim that the trial court ignored the evidence regarding his childhood.

In *Eddings*, the Supreme Court held that because the imposition of a death sentence demands individualized

---

[5] Allen directs us to page 24 of his supplemental brief (filed after the trial court issued its written sentencing order on remand). Nowhere in that section, or anywhere in his supplemental brief, does he argue that the Indiana Supreme Court's order to the trial court to consider new mitigating evidence was constitutional error because it should have remanded the case to a jury.

[6] Allen has made no "showing of cause and prejudice for the default," nor has he made "a showing that a failure to grant him relief would work a fundamental miscarriage of justice." *Thomas v. McCaughtry*, 201 F.3d 995, 999 (7th Cir. 2000).

consideration of each defendant's circumstances, a sentencing court must admit and consider all relevant mitigating advice. 455 U.S. at 114-15. In that case, the state trial judge stated that he could not be persuaded by the fact that Eddings was sixteen years old at the time of the crime. The judge continued, "Nor can the Court in following the law, in my opinion, consider the fact of this young man's violent background." *Id.* at 109. The Supreme Court remanded the case for the state courts to consider all relevant mitigating evidence and weigh it against the evidence of the aggravating circumstances, asserting, "Just as the State may not by statute preclude the sentencer from considering any mitigating factor, neither may the sentencer refuse to consider, *as a matter of law*, any relevant mitigating evidence." *Id.* at 113-14 (emphasis in original).

The rule of *Eddings* is that a sentencing court may not exclude relevant mitigating evidence. *See also Lockett v. Ohio*, 438 U.S. 586, 604 (1978). But of course, a court may choose to give mitigating evidence little or no weight. *Eddings*, 455 U.S. at 114-15. Allen maintains the trial court's sentencing order violates *Eddings*. He points out that the order discusses various mitigating circumstances (such as Allen's mental retardation and age) to the exclusion of his traumatic childhood, and then states that it "finds no other circumstances appropriate for consideration as a mitigating factor." Allen interprets these statements together to mean that the trial court did not consider (and therefore excluded) his traumatic childhood as an appropriate circumstance for consideration. Were that to be the case, *Eddings* would mandate relief for Allen. *See, e.g., Wright v. Walls*, 288 F.3d 937,

942-45 (7th Cir. 2002) (district court properly vacated Wright's death sentence pursuant to *Eddings* because the sentencing judge impermissibly refused to consider proposed mitigating evidence related to Wright's background).

Although we acknowledge that the sentencing order is somewhat cryptic, there is no statement in the sentencing order that expressly indicates that the sentencing court ignored Allen's childhood. *Cf. Eddings,* 455 U.S. at 113-14. Without that, it is plausible that the trial court's statement—that it found no other circumstances appropriate for consideration as a mitigating factor—means the trial court did not find Allen's childhood to be a "mitigating" circumstance. *Cf. Wright,* 288 F.3d at 942-45 (rejecting as unreasonable Illinois Supreme Court's determination that the sentencing judge considered mitigating evidence of the petitioner's traumatic history when sentencing court used language of exclusion in rejecting that evidence). Importantly, that is how the Indiana Supreme Court saw things. *Allen I,* 686 N.E.2d at 790. In light of our standard of review, we must defer to this factual finding. *See, e.g., Todd v. Schomig,* 283 F.3d 842, 855 (7th Cir. 2002) (deferring to the Illinois Supreme Court's conclusion that the sentencing court did consider all the mitigation evidence presented even though the record was ambiguous).

## D.  *Miranda* **claim**

Allen also claims that the trial court's admission of his statements to the police, which he contends were taken in

violation of *Miranda v. Arizona*, 384 U.S. 436 (1966), violated his Fifth Amendment rights. In particular, he argues that the police did not adequately advise him of his *Miranda* rights and that his confession was coerced and therefore involuntary. *See Dickerson v. United States*, 530 U.S. 428, 433-34 (2000).

The relevant facts are not in dispute. On July 14, 1987, Ernestine Griffin's next-door neighbor found Griffin's dead body in her home. She had been murdered with a butcher knife. The neighbor told officers that a man named Howard Allen had been at Griffin's house earlier that day. That afternoon, two detectives questioned Allen at his workplace (a carwash) and took him to the station. The state contends, and Allen does not dispute, that he was not a suspect then and was free to leave. While he was being questioned at the station, crime scene investigators discovered a slip of paper with Allen's phone number on it in the victim's house. At that point, Detective Crooke read him his *Miranda* rights, and Allen waived his rights in writing. Detective Crooke then proceeded to interrogate Allen.

During this questioning, Detective Crooke told Allen he did not think he was being truthful, and Allen volunteered to take a lie detector test. At 11:00 p.m. that evening, Allen was given a lie detector test by Detective Logsdon, a polygraph specialist. Before giving Allen the test, Detective Logsdon gave another *Miranda* warning orally and peppered it with questionable (and largely untrue) statements. For example, Detective Logsdon stated that the right to remain silent "sometimes . . . can

help and sometimes . . . can hurt" defendants, wrongly explained that "counsel" didn't necessarily mean lawyer but could be "pretty much anybody," offered to help the defendant himself, and stated that the court would appoint counsel that the defendant could not afford.

Allen, who did not ask questions during Detective Logsdon's speech, signed a second waiver form that was identical to the first form he had signed with Detective Crooke. Detective Logsdon administered the polygraph and interrogated Allen. He threatened Allen with the death penalty and represented that the state had evidence against Allen that it did not actually have. Allen told Detective Logsdon that he had been to Griffin's house, that she had chased him from her house with a butcher knife, and that he had hit her in the face. He denied hitting her with a toaster or stabbing her with a knife, and he never confessed to killing her. At 3:00 a.m., Allen was permitted to sleep and gave a formal statement the next day after being given a third *Miranda* warning by Detective Wright. He stated that he struck Griffin in the face.

Although Allen did not object to the introduction of his statements at trial, he raised Fifth Amendment issues in his direct appeal. The Indiana Supreme Court considered his *Miranda* claims notwithstanding Allen's failure to object in the trial court. *Allen I*, 686 N.E.2d at 769.

The Indiana Supreme Court cited *Miranda* and rejected Allen's arguments that he was not given an adequate *Miranda* warning and that his waiver was not voluntary. First, although the court acknowledged that Detective

Logsdon's *Miranda* warning was "deplorable," it noted that Allen had signed a waiver form after properly being advised of his rights the first time, and then again signed an identical waiver form after Detective Logsdon's warning. Because the two warnings were close in time, and because Allen had confirmed he understood his rights before speaking to Detective Logsdon, the court concluded that Detective Logsdon's warning did "not nullify the prior, proper advisement Allen received." *Id.* at 772. On this basis the court found that Allen had received adequate *Miranda* warnings. Second, the court found Allen's waiver of his rights was voluntary. Discussing the totality of the circumstances, specifically Allen's "conduct, apparently normal mental capacity, and extensive criminal record," the court determined that Allen voluntarily waived his rights. *Id.* at 773 (footnote omitted).[7]

Allen's argument before this court is that the Indiana Supreme Court's decision that Detective Logsdon's improper *Miranda* warning and Allen's subsequent waiver did not nullify an earlier valid warning and waiver is contrary to Supreme Court authority. We disagree.

At the outset we note that Allen does not dispute that he twice waived his rights pursuant to two proper *Miranda* waivers. (Recall that Allen was given a *Miranda* warning when he first became a suspect, and then again the

---

[7] We note that Allen did not argue, either here or before the state courts, that his mental retardation had any effect on the knowing, intelligent, or voluntary nature of his waiver. So we do not consider it.

next day before he gave a statement to Detective Wright.) Nor does he dispute the Indiana Supreme Court's finding that the first of those two waivers was made voluntarily.[8] *See Allen I*, 686 N.E.2d at 772. Instead, Allen focuses exclusively on his encounter with Detective Logsdon, which occurred in between those two warnings, and argues that the encounter tainted Allen's prior and subsequent waivers.

Rather than citing any case law from the Supreme Court that directly supports this proposition, Allen directs our attention to the Eleventh Circuit's opinion in *Hart v. Attorney General of State of Florida*, 323 F.3d 884 (11th Cir. 2003). *Hart* held that a defendant's waiver was the product of deception where police officers made statements that contradicted their earlier *Miranda* warning. 323 F.3d at 894-95. AEDPA, however, requires us to look at Supreme Court authority for "clearly established federal law," and the Supreme Court has not established a rule that would give us clear guidance on this issue. *See, e.g., Duckworth v. Eagan*, 492 U.S. 195 (1989) (officer's misstatement of state law did not invalidate *Miranda* waiver); *Jackson v. Frank*, 348 F.3d 658, 664 (7th Cir. 2003) ("the uncertainty after *Duckworth* as to how to balance . . . the veracity of an officer's statement of state law and the provision of proper *Miranda* warnings-prevents this court from concluding that the [state] courts unreasonably applied clearly established federal law."). So we

---

[8] The Indiana Supreme Court did not discuss the third *Miranda* waiver.

are unable to find that the decision of the Indiana Supreme Court was "contrary to" clearly established federal law as determined by the Supreme Court.

Turning to whether the Indiana Supreme Court unreasonably applied clearly established federal law to this case, we come up equally short. Allen argues that Detective Logsdon's conduct coerced him into making statements and involuntarily waiving his rights. Pursuant to Supreme Court authority, a "defendant may waive effectuation" of the rights conveyed in the *Miranda* warnings "provided the waiver is made voluntarily, knowingly and intelligently." *Moran v. Burbine,* 475 U.S. 412, 421 (1986) (quoting *Miranda*, 384 U.S. at 444, 475). The voluntariness test takes into consideration "the totality of all the surrounding circumstances—both the characteristics of the accused and the details of the interrogation." *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973). These circumstances may include the length of the interrogation, the defendant's maturity, education, and mental health, as well as whether the defendant was advised of his *Miranda* rights. *Withrow v. Williams*, 507 U.S. 680, 693-94 (1993). But the element of coercion is "crucial" to a determination that a confession was involuntary. *Id*.; *Colorado v. Connelly,* 479 U.S. 157, 167 (1986) ("coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' ").

Here, the Indiana Supreme Court considered the circumstances surrounding Allen's interrogation and found that there was no coercion. 686 N.E.2d at 772-73 (discussing Allen's first voluntary waiver two hours before

the second waiver, his conduct during the interrogation, his "apparently normal mental capacity," and his "extensive criminal record" and familiarity with the interrogation process). We are not able to say that finding was "objectively unreasonable." *Jackson*, 348 F.3d at 662 (quoting *Lockyer v. Andrade*, 538 U.S. 63 (2003)).

## III. CONCLUSION

The judgment of the district court is AFFIRMED in part and REVERSED in part. We REMAND the case for further proceedings consistent with this opinion.